## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARCIA W. DAVILLA, et al. | ) | |
| | ) | |
| Plaintiffs and Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | Civ. No. 5:15-cv-01262-M |
| | ) | |
| ENABLE MIDSTREAM PARTNERS, L.P, et al. | ) | |
| | ) | |
| Defendants and Counterclaim Plaintiffs. | ) | |
| | ) | |

## **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE DATE DEFENDANTS' TRESPASS COMMENCED WITH BRIEF IN SUPPORT**

Dustin T. Greene
N.C. Bar No. 38193
Elizabeth L. Winters
N.C. Bar No. 44918
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7432
Fax: (336) 734-2612

Catherine Munson
D.C. Bar No. 985717
Keith M. Harper
D.C. Bar No. 451956
Krystalyn Kinsel
A.Z. Bar No. 0328853
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 508-5800
Fax: (202) 508-5858

Stephanie C. Hudson
Oklahoma Bar. No. 15977
Oklahoma Indian Legal Services
4200 Perimeter Center Dr., Suite 222
Oklahoma City, OK 73112
Telephone: (405) 943-6457
Fax: (405) 917-7060
hudson@oilsonline.org

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ..................................................................... 2

PROCEDURAL HISTORY ............................................................................................ 6

ARGUMENT ................................................................................................................ 7

I.      Legal Standard. ................................................................................................. 8

II.     The Undisputed Facts Establish That Defendants' Trespass Commenced on
        November 19, 2000 as a Matter of Law. ............................................................. 9

III.    Enable's Alleged "Good Faith Negotiations" and the 2006 BIA Assessment
        Do Not Affect the Date of Accrual. ................................................................... 12

        A.      The Undisputed Facts Show That Enable Did Not Engage In "Good
                Faith" Negotiations With Plaintiffs. ........................................................ 13

        B.      The BIA's Trespass Assessment Does Not Affect the Date Enable's
                Trespass Commenced for Purposes of Plaintiffs' Claims. .......................... 18

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Am. Hardware Mut. Ins. Co. v. Harley Davidson of Trenton, Inc.*,
   124 F. App'x 107 (3rd Cir. 2005).................................................................. 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................ 8, 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................... 8

*Cramer v. United States*,
   261 U.S. 219 (1923) .................................................................................. 19

*Davilla et al. v. Enable Midstream Partners, et al.*,
   Opinion, 17-6088 (10th Cir. Jan. 10, 2019) ................................................ 2

*Edwardsen v. Morton*,
   369 F. Supp. 1359 (D.D.C. 1973)............................................................... 19

*Enable Oklahoma Intrastate v. 25 Foot Wide Easement*,
   CIV-15-1250-L (filed 11/11/15)................................................................. 17

*Flandreau Santee Sioux Tribe v. South Dakota*,
   2011 WL 2551379 (D.S.D. June 27, 2011)................................................. 14

*Franklin v. Thompson*,
   981 F.2d 1168 (10th Cir. 1992) ................................................................... 8

*In re Ellicott Sch. Bldg. Auth.*,
   150 B.R. 261 (Bankr. D. Colo. 1992)......................................................... 14

*Jennings v. Elliott*,
   97 P.2d 67 (Okla. 1939)............................................................................. 10

*Kaiser Aetna v. United States*,
   444 U.S. 164 (1979) .................................................................................... 1

*Magnolia Pipe Line Co. v. Polk*,
   90 P.2d 1076 (Okla. 1939)......................................................................... 11

*McAfee v. Duke Energy Field Servs., L.P.*,
   No. CIV-05-672-C, 2005 WL 8157799 (W.D. Okla. Oct. 25, 2005) ........... 11

*Poafpybitty v. Skelly Oil Co.*,
   390 U.S. 365 (1968) .................................................................................. 20

*Tellez v. Okla. City Univ.*,
   No. CIV-04-1400-F, 2005 WL 1657040 (W.D. Okla. July 5, 2005)............. 3

## <u>Statutes</u>

11 U.S.C. § 109 ...................................................................................................... 14

25 U.S.C. § 2710(d) ............................................................................................... 14

25 U.S.C. § 323 ................................................................................................... 8, 9

25 U.S.C. § 324 ......................................................................................... 9, 10, 18

25 U.S.C. § 357 ....................................................................................................... 6

## <u>Rules</u>

Fed. R. Civ. P. 56 ................................................................................................. 1, 8

Fed. R. Civ. P. 56(a) (2015) ................................................................................... 8

LCvR56.1 ................................................................................................................ 1

LCvR56.1(b) ........................................................................................................... 2

LCvR56.1(d) ........................................................................................................... 2

## <u>Regulations</u>

25 C.F.R. § 161.5(I) .............................................................................................. 11

25 C.F.R. § 161.7011 ............................................................................................ 19

25 C.F.R. § 169 ..................................................................................................... 14

25 C.F.R. § 169.410 ................................................................................... 13, 14, 19

25 C.F.R. § 169.413 ......................................................................................... 19, 20

80 Fed. Reg. 1942-02 ............................................................................................. 3

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), and

LCvR56.1, Plaintiffs move the Court to enter partial summary judgment in their favor

and to hold that Defendants' trespass commenced on November 19, 2000 when their last

easement to use Plaintiffs' land expired.

## <u>INTRODUCTION</u>

The "right to exclude others" from private property is "one of the most essential

sticks in the bundle of rights that are commonly characterized as property . . . ." *Kaiser*

*Aetna v. United States*, 444 U.S. 164, 176 (1979). Yet, for nearly two decades the

Defendants (collectively "Enable") knowingly operated a natural gas pipeline

("Pipeline") across Plaintiffs' land, in open disregard for Plaintiffs' fundamental property

rights, and in direct contradiction to the terms of their easement, federal statutes, and the

controlling regulations.

This Court has already entered partial summary judgment on liability in favor of

Plaintiffs, holding that there is no genuine issue of material fact that Defendants

trespassed by continuing to operate their Pipeline across Plaintiffs' land after Defendants'

easement expired in November of 2000. However, the Court's earlier summary judgment

order, which was based on facts stipulated to by the parties, did not determine the date on

which Defendants' trespass commenced, which is a material issue for determining

damages in this case.

Since then, undisputed facts have emerged that show Defendants' trespass

unquestionably commenced when its easement expired. Additionally, on Defendants'

intervening appeal from this Court's earlier summary judgment order, the Tenth Circuit

conclusively rejected Defendants' argument for a later trespass date. Defendants argued that they were not in trespass until and unless Plaintiffs made a pre-suit demand for removal of the Pipeline. The Tenth Circuit rejected this argument, holding that "*ha[d] no legal right to keep a structure on the Allottees' land unless and until it secure[d] a right-of-way for that purpose from the Secretary of the Interior*" and that "*there would have been no sense in limiting the easement term to twenty years otherwise.*" *Davilla et al. v. Enable Midstream Partners, et al.*, Opinion, 17-6088 (10th Cir. Jan. 10, 2019) [Dkt. 124] at 12, 18 ("10th Cir. Op.") (emphasis added).

## STATEMENT OF UNDISPUTED FACTS

Pursuant to LCvR56.1(b) and (d), Plaintiffs provide the following numbered paragraphs setting forth the material facts of this case, many of which have been stipulated to by the parties and/or were resolved in the Court's earlier partial summary judgment order [Dkt. 56] and the Tenth Circuit's decision affirming entry of partial summary judgment against Defendants on liability. 10th Cir. Op.[1]

1.     This case involves Emaugobah Kiowa Allotment 84, which is also known as Tract 802 S 84-D, located in Caddo County, Oklahoma ("Allotment 84" or "the

---

[1] The Tenth Circuit affirmed that portion of this Court's order granting partial summary judgment on liability against Defendants. It reversed the Court's related entry of a permanent injunction, holding that the Court must apply a different legal standard. However, while the case was pending on appeal, Defendants rerouted the Pipeline around Plaintiffs' property and have ceased transmitting natural gas through the abandoned section of line, which remains buried on Plaintiffs' property. Declaration of Preston Soell ("Soell Decl.") (filed herewith as Ex. A to Plaintiffs' Appendix). Defendants have further informed Plaintiffs that they intend to remove the abandoned line from the property before the July 3, 2019 status conference in this case. Plaintiffs reserve their right to renew their motion for a permanent injunction if Defendants fail to remove the line by that date.

Property"). (Joint Status Report[2] [Dkt. 22], Stipulated Fact #1; Summary Judgment Order [Dkt. 56] at 1.)

2.     The beneficial owners of Allotment 84 are the federally recognized Kiowa Tribe and the individual allottees, which include Plaintiffs. 80 Fed. Reg. 1942-02, at *6 (Jan. 14, 2015) (listing all federally recognized tribes); (Joint Status Report [Dkt. 22], Stipulated Facts #1, #9; Summary Judgment Order [Dkt. 56] at 1.)

3.     The owners of Allotment 84 all hold undivided fractional interests in the Property, varying from 28.6% down to less than 9/10ths of a percent. The Tribe owns a 1.1% undivided interest in the Property. (Joint Status Report [Dkt. 22], Stipulated Facts #1; Summary Judgment Order [Dkt. 56] at 1.)

4.     The United States holds Allotment 84 in trust for the benefit of all of the owners, including the Kiowa Tribe. (Joint Status Report [Dkt. 22], Stipulated Facts #1, #9; Summary Judgment Order [Dkt. 56] at 1.)

5.     On November 19, 1980, the United States granted Defendants' predecessor, Producer's Gas Company, a 20-year easement across a portion of Allotment 84 to construct and operate a 20-inch natural gas pipeline. (Easement [Dkt. 32-2]; Joint Status Report [Dkt. 22], Stipulated Fact #2; Summary Judgment Order [Dkt. 56] at 2); 10th Cir. Op. at 6-7.)

---

[2] The parties' stipulations in the February 23, 2016 Joint Status Report constitute "judicial admission[s]." *Tellez v. Okla. City Univ.*, No. CIV-04-1400-F, 2005 WL 1657040, at *2 (W.D. Okla. July 5, 2005).

6.      In 1999, Enable acquired Producer's Gas Company's successor-in-interest and therefore, succeeded to the rights of the original right-of-way easement under the Property.  (Joint Status Report [Dkt. 22], Stipulated Fact #2.)

7.      Defendants' easement expired on November 19, 2000. (Joint Status Report [Dkt. 22], Stipulated Fact #2; Summary Judgment Order [Dkt. 56] at 2; 10th Cir. Op. at 7.)

8.      On June 14, 2002, Enogex, Inc. ("Enogex"), successor in interest to Producer's Gas, submitted a right-of-way renewal application to BIA and made an offer to Plaintiffs for a new 20-year easement, which was rejected by a majority of the landowners. (Joint Status Report [Dkt. 22], Stipulated Fact #3; Summary Judgment Order [Dkt. 56] at 2.)

9.      On April 13, 2006, the BIA cancelled Enogex's application for a new right-of-way. (Apr. 13, 2006 Letter from Betty Tippeconnie, BIA Superintendent [Dkt. 118-10] (also included in Pls.' App. at Ex. B.)

10.      In a letter dated August 24, 2006, the BIA informed Enogex that a trespass assessment of $2 per rod per year (extrapolated from $40 per rod for a 20-year easement) would be assessed for the time period from November 19, 2000 through the date of the BIA's letter.[3] (Aug. 24, 2006 Letter from Betty Tippeconnie, BIA Superintendent [Dkt. 118-11] (also included in Pls.' App. at Ex. C); Mar. 23, 2010 letter from Dan

---

[3] The August 24, 2006 letter is not addressed to any of the Plaintiffs in this case, and there is no evidence that any of the Plaintiffs received this letter.

Deerinwater, BIA Regional Director ("Deerinwater Letter"), at 3 [Dkt. 32-3] (also included in Pls.' App. at Ex. D).)

11.    On September 13, 2006, Enogex acknowledged that it was trespassing, and paid the BIA assessment in the amount of $1,098.35. (Deerinwater Letter at 3.)

12.    The only offer Enable or its predecessor ever made to Plaintiffs to renew the easements was for $40/rod. (Deposition of Brian Green ("Green Dep.") at 40:13-41:19, 46:1-47:1, 47:9-18, 66:22-67:21 (excerpts in Pls.' App. at Ex. E); Deposition of Jamie Burrell ("Burrell Dep.") at 20:10-17, 40:10-41:3, 41:12-22 (excerpts in Pls.' App. at Ex. F.) Although Enable hired a third-party, Bearcat Land Co., to obtain consents for the renewal from Plaintiffs, Bearcat was never authorized to offer anything other than $40/rod. (Deposition of John Coury ("Coury Dep.") at 34:20-35:2, 36:19-37:18 (excerpts in Pls.' App. at Ex. G); Deposition of Gilbert Miles ("Miles Dep.") at 43:3-20 (excerpts in Pls.' App. at Ex. H.)

13.    In 2008, for reasons that are still unexplained, the Interim Superintendent for the local BIA agency approved a renewal of the right-of-way easement for twenty years. (Joint Status Report [Dkt. 22], Stipulated Fact #5; Summary Judgment Order [Dkt. 56] at 2-3.)

14.    The BIA did not obtain Plaintiffs' consent for this 2008 renewal. (Joint Status Report [Dkt. 22], Stipulated Fact #5.)

15.    Plaintiffs appealed the Interim Superintendent's decision, and in 2010, the BIA vacated that decision because it determined that it did not have authority to approve the right-of-way without the consent of Plaintiffs or their predecessors in interest and that

the $40/rod price offered by Defendants was unreasonable. (*Id.*, Stipulated Facts #5, #6; Defs.' Answer [Dkt. 6] ¶ 2; Summary Judgment Order [Dkt. 56] at 3.)

16.     The BIA remanded the case for "further negotiation" and instructed that "[i]f valid approval of a right of way for this tract is not timely secured, Enogex should be directed to move the pipeline off the subject property." (Summary Judgment Order [Dkt. 56] at 9; Deerinwater Letter at 5.)

17.     Since the BIA's decision in 2010, Defendants have never obtained Plaintiffs' consent for a right-of-way. (Joint Status Report [Dkt. 22], Stipulated Fact #8; Summary Judgment Order [Dkt. 56] at 3.)

18.     Despite not obtaining Plaintiffs' consent, and despite the BIA's 2010 directive that the Pipeline should be removed if that consent was not obtained, Defendants continued to operate their Pipeline across Allotment 84 until November 2018. (Joint Status Report [Dkt. 22], Stipulated Facts #7, #8; Answer [Dkt. 6] ¶ 4 ("Defendants admit that their pipeline remains in place in the Easement."); Summary Judgment Order [Dkt. 56] at 3; Soell Decl.)

## **PROCEDURAL HISTORY**

Plaintiffs filed this action to halt Defendants' ongoing trespass on November 16, 2015, shortly after Enable filed suit to take the easement across Plaintiffs' property by condemnation.[4] [Dkt. 1]. After Enable filed its Answer, the parties filed a Joint Status

---

[4] Defendants filed CIV-15-1250-L to condemn an easement across Allotment 84 under 25 U.S.C. § 357. (*See* Compl. in CIV-15-1250-L [Dkt. 1] (filed 11/11/15).) That action, along with the parallel condemnation counterclaim in this case, was dismissed on August 19, 2016, and Defendants' motion for reconsideration was also denied. (*See* Dkts. 55, 80 in CIV-15-1250-L.)

Report and Discovery Plan containing the stipulated facts recited above, which were intended to narrow the scope of the issues for litigation. [Dkt. 22].

Plaintiffs moved for partial summary judgment on liability and for a permanent injunction on April 1, 2016, which motions were granted in full on March 28, 2017. [Dkt. 56]. While the Court rejected all of Defendants' defenses to liability for federal common law trespass, the Court did not reach the issue of when the trespass first commenced because it was not relevant to liability for Defendants' continuing trespass. (Summary Judgment Order [Dkt. 56] at 7.)

Defendants filed an interlocutory appeal from the Court's March 28, 2017 summary judgment order and permanent injunction. The Tenth Circuit affirmed this Court's summary judgment decision on January 10, 2019, but reversed the issuance of the permanent injunction, remanding the issue to this Court to apply the federal (rather than Oklahoma state) injunction standard. (10th Cir. Op. [Dkt. 124].) Defendants filed a Petition for Panel Rehearing or for Rehearing *En Banc* on January 24, 2019, which was denied on February 14, 2019.

## **ARGUMENT**

The material facts in this case are undisputed, and the Tenth Circuit's opinion disposes of any argument remaining to Defendants that they were not in trespass after their easement expired on November 19, 2000. Defendants have stipulated that they

---

Defendants also appealed this Court's dismissal of their condemnation action. The Tenth Circuit affirmed that dismissal on November 15, 2018. *Enable Oklahoma Intrastate v. 25 Foot Wide Easement*, 908 F.3d 1241 (10th Cir. 2018).

continued to operate the Pipeline across Plaintiffs' Property after the easement expired. (Joint Status Report [Dkt. 22], Stipulated Facts #2, #7, #8, #9.) And, the Tenth Circuit clearly held that Enable "***ha[d] no legal right to keep a structure on the Allottees' land unless and until it secure[d] a right-of-way for that purpose from the Secretary of the Interior.***" (10th Cir. Op. at 12 (citing 25 U.S.C. § 323) (emphasis added).) Thus, Enable's trespass began when the easement expired on November 19, 2000. Plaintiffs are entitled to summary judgment on this issue.

## I.     <u>Legal Standard.</u>

Federal Rule of Civil Procedure 56 provides that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought. Fed. R. Civ. P. 56(a) (2015) (emphasis added). The Court "*shall grant* summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." [5] *Id*. (emphasis added); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to produce specific facts upon which a reasonable jury could find that there is a genuine issue of material fact for trial. *Id.* at 331. While the facts and all reasonable inferences are to be viewed in the light most favorable to the nonmovant, the "mere existence of *some* alleged factual dispute between the parties will

---

[5] A motion for partial summary judgment is resolved under the same standard as a motion for summary judgment. *Franklin v. Thompson*, 981 F.2d 1168, 1169 (10th Cir. 1992).

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

## II.   The Undisputed Facts Establish That Defendants' Trespass Commenced on November 19, 2000 as a Matter of Law.

There is no genuine issue of material fact in this case. Defendants admit that they continued operating the Pipeline across Plaintiffs' property without an easement after November 19, 2000. The only issues left to resolve in this case regarding the time period of Defendants' trespass are legal.

The Tenth Circuit succinctly stated the elements of trespass in this case as: (1) Plaintiffs' entitlement to possession of the allotment; (2) Enable physically entered or remained on the allotment; and (3) Enable lacked a legal right—express or implied—to enter or remain on the Property.[6] (10th Cir. Op. [Dkt. 124] at 10.) The first two elements are indisputably satisfied. (*Id.*) Regarding the third element, the Tenth Circuit was clear that "Congress has dictated the prerequisites" for legal entry by statute, and Defendants "ha[d] no legal right to keep a structure on the Allottees' land unless and until it secure[d] a right-of-way for that purpose from the Secretary of the Interior" and "[t]he Secretary *must*, in turn, have the approval of the relevant Indian stakeholders." (*Id.* at 12-13 (citing 25 U.S.C. §§ 323, 324) (emphasis added).)

---

[6] Although federal common law governs Plaintiffs' claims for trespass to their federally protected trust allotment, the Court borrows Oklahoma trespass law to determine Defendants' liability, where that law is not inconsistent with federal statutes or policy. (10th Cir. Op. [Dkt. 124] at 8-10.)

Of course, Enable obtained neither the consent of the majority of the landowners, as required for renewal of the easement under 25 U.S.C. § 324, nor a new easement from the Secretary. Thus, the 10th Circuit held that "*[t]he undisputed facts—expiration of the easement, specifically—show that Enable lacks a legal right to keep the pipeline in the ground.*" (10th Cir. Op. [Dkt. 124] at 14) (emphasis added)). And, as this Court found and the Tenth Circuit affirmed, Enable did not have consent of the majority of the landowners to remain on the Property after expiration of the lease as required under the federal right of way statutes. (Summary Judgment Order [Dkt. 56] at 5-7; 10th Cir. Op. [Dkt. 124] at 11-16.)

The Tenth Circuit also thoroughly disposed of Enable's legal arguments as to why it allegedly was not in trespass once its easement expired. First, Enable contended on appeal that its trespass did not commence until Plaintiffs made a demand for removal of the Pipeline. (10th Cir. Op. [Dkt. 124] at 15.) The Tenth Circuit held that Enable had forfeited this argument because it was not raised to this Court during the prior summary judgment motion. (*Id.* at 16-17.) However, the Tenth Circuit also stated that "Enable's forfeiture does not prevent us from *definitively rejecting its demand argument on the merits*. And in the interest of clarifying the law, we think it appropriate to do so." (*Id.* at 17 (emphasis added) (citations omitted).) The Tenth Circuit then went on to hold that Oklahoma law, which it found is incorporated into Plaintiffs' claim on this issue, does not impose any demand requirement. (*Id.*); *see also Jennings v. Elliott*, 97 P.2d 67, 71 (Okla. 1939) ("Where an oil and gas lease has terminated either by the expiration of the term or by reason of other provisions therein, the act of the lessee in remaining in possession

10

without the consent of the owner . . . amounts to trespass."); *McAfee v. Duke Energy Field Servs., L.P.*, No. CIV-05-672-C, 2005 WL 8157799, at *1 (W.D. Okla. Oct. 25, 2005) ("Oklahoma law is clear that a cause of action for trespass seeking monetary damages accrues with the breaking of the close"; holding that "any claim the Plaintiffs had for [trespass] accrued at the expiration of the lease.") (citing *Magnolia Pipe Line Co. v. Polk*, 90 P.2d 1076, 1076 (Okla. 1939).

The Tenth Circuit then turned Enable's arguments under the Restatement (Second) of Torts, which Enable contended applied to the accrual of Plaintiffs' trespass claim, and quickly disposed of them as well. (10th Cir. Op. [Dkt. 124] at 17-18.) "According to [the Restatement's rules], *the easement's expiration created a duty to remove the pipeline*. *Permission to lay and maintain the pipeline came hand-in-hand with an obligation to remove it*." (*Id*. (emphasis added).)

The Tenth Circuit also noted that its conclusion was further supported by the terms of the easement itself (which authorized the easement holder to "'install … and remove' the pipeline within a term of twenty years"), and the regulations, specifically "25 C.F.R. § 161.5(I) … [which] require[ed] right-of-way applicants to expressly agree to restore the land to its original condition" upon expiration of the easement. (10th Cir. Op. [Dkt. 124] at 18.)

The common sense conclusion that Enable was under an obligation to remove the Pipeline when its easement expired on November 19, 2000, and was thus in trespass when it did not do so, is best summarized by the Tenth Circuit's observation that,

11

"*[i]ndeed, there would have been no sense in limiting the easement term to twenty years otherwise*." (*Id.*)

Finally, the Tenth Circuit held that Enable's failure to conduct proper due diligence prior to acquiring the Pipeline and the easement was also no excuse for its failure to remove the pipeline. "Enable acquired the pipeline *already knowing* the right-of-way would eventually expire. It therefore cannot—and indeed does not—claim it lacked notice of its duty to remove or intent to maintain the trespass." (10th Cir. Op. [Dkt. 124] at 21 (emphasis in the Tenth Circuit's opinion).)

Enable's trespass thus began when Enable remained on the property without a legal right to do so. That date is November 19, 2000—the date on which Enable's easement expired and it failed to remove the Pipeline or obtain a new easement. Plaintiffs are entitled to summary judgment that Enable's trespass commenced on November 19, 2000.

### III. Enable's Alleged "Good Faith Negotiations" and the 2006 BIA Assessment Do Not Affect the Date of Accrual.

Plaintiffs anticipate that Enable will make two additional, but equally ill-fated arguments in support of its position that its trespass commenced sometime after November 19, 2000. First, Plaintiffs expect Enable to argue that its trespass was tolled or excused by alleged "good faith negotiations" with the landowners for a renewal of the easement. Second, Enable may argue that Plaintiffs should not be allowed to recover for

trespass prior to September 2006 because of the BIA trespass assessment.[7] Neither

argument is effective.

###### A.     The Undisputed Facts Show That Enable Did Not Engage In "Good Faith" Negotiations With Plaintiffs.

The undisputed facts—including testimony from Enable's own witnesses—shows

that there were no good faith negotiations, only an unreasonable offer of $40/rod that was

repeatedly rejected by the landowners and a plan to condemn the easement if that offer

was not accepted. These take it or leave it offers do not toll or excuse Enable's trespass

liability.

Relying on BIA Regional Director Deerinwater's 2010 decision and 25 C.F.R. §

169.410, Enable has previously argued that it was engaged in "good faith negotiations"

with Plaintiffs, precluding a finding of trespass. (*See, e.g.*, Defs.' Mot. for Partial Summ.

J. and Brief in Supp. [Dkt. 118] at 4, 11 n.8 (contending that Enable was "always a

willing and good faith participant in renewal negotiations");  Defs.' Objection and Resp.

to Pls.' Mot. for Partial Summ. J. on Liability for their Trespass Claim and For a

Permanent Injunction [Dkt. 36] at 7 (contending the facts showed Enable engaged in

"good-faith negotiations" with Plaintiffs).)

25 CFR § 169.410 is a regulation that was first enacted in 2016. It states that the

BIA "may take action to recover possession on behalf of the Indian landowners" or

---

[7] This Court previously held, in accord with precedent from the United States Supreme Court, that there is no statute of limitations for Plaintiffs' federal common law trespass clams. (Summary Judgment Order [Dkt. 56] at 5; *see also* Dkt. 51 at 3-4.) Enable did not appeal this portion of the summary judgment order, which is now the law of the case.

pursue other remedies for trespass "[u]nless the parties have notified [the BIA] in writing that they are engaged in good faith negotiations to renew or obtain a new right-of-way." Not only did this regulation not exist in 2006, it also does not prevent a cause of action for trespass from accruing. It also requires *good faith* negotiations, which did not happen here.

Section 169.410 and the chapter of the regulations in which it appears (25 C.F.R. Chapter 169) do not contain any definition of "good faith negotiations," nor are there any cases interpreting this provision. However, in interpreting good faith negotiation provisions in other statutes, courts have consistently held that adopting a "take it or leave it" position is evidence of the *absence* of good faith. For example, in *Flandreau Santee Sioux Tribe v. South Dakota*, 2011 WL 2551379, at *2 (D.S.D. June 27, 2011), the court interpreted a good faith negotiation provision in the Indian Gaming Regulatory Act, 25 USC § 2710(d), by reference to cases interpreting the National Labor Relations Act:

> Good faith means more than merely going through the motions of negotiating; it is inconsistent with a predetermined resolve not to budge from an initial position.…Good faith presupposes a desire to reach ultimate agreement *and not simply an attitude of take it or leave it*.

*Flandreau*, 2011 WL 2551379 at *3 (internal quotations omitted) (emphasis added) (citing several cases); *see also In re Ellicott Sch. Bldg. Auth.*, 150 B.R. 261, 266 (Bankr. D. Colo. 1992) (interpreting a good faith negotiation provision in the bankruptcy statutes, 11 U.S.C. § 109, and holding that "no true good faith negotiations took place" where the debtor presented its proposal "as a 'take it or leave it' proposal, and expressed unwillingness to compromise"); *Am. Hardware Mut. Ins. Co. v. Harley Davidson of*

*Trenton, Inc.*, 124 F. App'x 107, 111 (3rd Cir. 2005) (holding that insurer's "$100,000 take-it-or-leave-it offer did not constitute good faith settlement negotiations" where insurer "chose not to explore" other amounts in settlement).

Despite being on notice that the easement expired on November 19, 2000, Enable did not take any action to renew the easement until 2002, when it finally submitted a renewal application to the BIA, and Enable never attempted to reach out to the landowners before submitting the renewal application. (Green Dep. (Pls.' App. Ex. E) at 24:12-25:5, 29:20-30:5, 32:2-15 (Enable's director of rights-of-way testifying that the June 14, 2002 renewal application was the first action Enable took to renew the expired easement), 34:11-17 (testifying that he could not identify "any efforts" taken to obtain consent from any landowners prior to submitting the renewal application), 39:9-40:8 (testifying that no one at Enable made any effort to reach out to the landowners directly before submitting the renewal application); Burrell Dep. (Pls.' App. Ex. F) at 16:9-16, 17:3-9 (testifying she was not aware of any Enable employees who communicated with the landowners regarding renewal).) Enable was thus indisputably in trespass from the date the easement expired until June 14, 2002.

And, when Enable did finally reach out to the landowners, ***the only offer Enable ever made*** was a take it or leave it offer of $40 per rod. When Enable's representatives met with the BIA and some of the landowners at the Anadarko BIA office in 2007 (the only in person meeting that ever occurred), their offer "had not changed" and was still $40 per rod. (Green Dep. (Pls.' App. Ex. E) at 46:19-47:1.) In fact, Enable ***never*** offered anything other than $40 per rod, nor did anyone at Enable even request authority to offer

a higher price. (*Id*. 47:9-18, 66:22-67:10.) Although Enable hired a third party, Bearcat Land Co., to obtain consents from the landowners, Bearcat's directive was to make the same take it or leave it offer that had been repeatedly rejected; Enable ***never*** authorized Bearcat to offer the landowners more than $40 per rod. (Coury Dep.[8] (Pls.' App. Ex. G) at 34:20-35:2, 36:19-37:18; Miles Dep. (Pls.' App. Ex. H) at 38:18-39:12, 43:3-20 (testifying that, after Marcie Davilla indicated that she and her relatives were not going to sign the consents for the $40/rod amount, he stopped contacting landowners regarding renewal).)

Removing any doubt about whether Enable was negotiating in good faith, Enable prepared to file a condemnation action when the landowners would not accept $40 per rod. (Green Dep. (Pls.' App. Ex. E) at 48:1-7, 51:9-52:7, 55:14-56:24, Ex. 11 (February 15, 2008 letter from BIA to B. Green indicating that Enable had made the decision to condemn the property prior to January 30, 2008), Ex. 12 (April 28, 2008 email from J. Burrell to J. Coury and B. Green (stating "I guess they didn't want [the property] condemned").) These take it or leave it and strong arm tactics do not constitute good faith negotiations.

From 2008 to 2010, after Enable submitted a new application for renewal of the easement, Enable still considered the status to be "still in a very slow negotiated position to try to get it renewed." (Green Dep. at 60:11-23.) Yet, Brian Green, Enable's director of rights-of-way, was the only individual at Enable who would have been handling further

---

[8] Mr. Coury is the principal of Bearcat. Gilbert Miles was Bearcat's other employee during the relevant time period.

negotiations with the landowners, and he testified that he had no recollection of ***any***

further efforts to reach out to the landowners. (*Id.* at 60:11-23, 62:3-19.)

Ultimately, in 2010 the BIA found that Enable's $40/rod offer was "inadequate"

because "[t]he appraisal value is a basis for negotiations and establishes a bottom line

value but does not limit in any manner, the potential for a higher negotiated price."

(Deerinwater Letter at 5.)

Even when counsel for Plaintiffs, David Smith, sent a letter to Enable in 2015

inviting negotiations, Enable still did not make any effort to negotiate with the

landowners. (Green Dep. (Pls.' App. Ex. E) at 63:5-21.) Instead, Enable filed its action to

take the easement by condemnation—which was, of course, always its plan if the

landowners did not accept its $40/rod take it or leave it offer. *See Enable Oklahoma*

*Intrastate v. 25 Foot Wide Easement*, CIV-15-1250-L [Dkt. 1] (filed 11/11/15).) That

action, along with the parallel condemnation counterclaim in this case, was eventually

dismissed. (*See* Dkts. 55, 80 in CIV-15-1250-L.)

The evidence—including testimony from Enable's own witnesses—shows that

Enable never engaged in actual negotiations with Plaintiffs, much less good faith

negotiations that would toll its trespass. Instead, Enable tried to get the renewal approved

by the BIA without any input from Plaintiffs, and then proceeded to pursue condemnation

when it realized that the landowners were not going to simply accept its $40 per rod

offer. (Green Dep. at 63:5-21.) In short, Enable's oft-rejected take it or leave it offer,

backed by the threat of condemnation, does not provide any basis to limit Plaintiffs'

trespass claims.

**B.     The BIA's Trespass Assessment Does Not Affect the Date Enable's Trespass Commenced for Purposes of Plaintiffs' Claims.**

Enable may also argue that Plaintiffs should not be allowed to recover for trespass prior to September 2006 based on the BIA's trespass assessment. However, that assessment, which Plaintiffs were not involved in and did not agree to, does not have any impact on Plaintiffs' civil claims. At most, Enable is entitled to a credit against Plaintiffs' recovery in this action for the amount of any payment shown at trial to have been made to the BIA and distributed to Plaintiffs.

In 2006, the BIA assessed $1,098.35 as a trespass penalty against Enable for the time period of November 19, 2000 through August 2006, which Enable paid in September 2006. (Aug. 24, 2006 Letter from Betty Tippeconnie, BIA Superintendent [Dkt. 118-11]; Deerinwater Letter at 3.)  In its opposition to Plaintiffs' earlier motion for summary judgment, Enable argued that this assessment precluded summary judgment because "Plaintiffs have failed to identify when the alleged trespass arose, if it ever did." (Defs.' Objection and Resp. to Pls.' Mot. for Partial Summ. J. on Liability for their Trespass Claim and For a Permanent Injunction [Dkt. 36] at 3.) This assessment did not preclude entry of summary judgment on liability. It also provides no basis to limit Plaintiffs' trespass claims or recovery.

First, under 25 U.S.C. § 324, the BIA could not authorize an extension or renewal of the easement across Plaintiffs' property without the consent of the majority of the interest owners. It is now well-established that a majority of the interest owners never

consented to a renewal or extension of the easement. (Summary Judgment Order [Dkt. 56] at 2, 5-7; 10th Cir. Op. [Dkt. 124] at 11-15.)

Second, in 2006, when this assessment was made, there was no regulation authorizing the BIA to make a trespass assessment on behalf of the landowners. 25 C.F.R. § 169.410[9] and 25 C.F.R. § 169.413, which permit the BIA to take enforcement action against a trespasser on behalf of Indian landowners, did not become effective until April 21, 2016.[10] Prior to that date, there was no comparable regulation that gave the BIA authority to assess trespass penalties.[11] To be clear, the United States could have instituted an action for ejectment, to require Enable to remove the Pipeline from Plaintiffs' property. And, Plaintiffs' trespass claims could have been settled in that context, but such settlement would have required Plaintiffs consent.

Third, even if the BIA had been authorized to assess penalties for trespass, it has never been authorized to, and did not purport to release Plaintiffs' trespass claims in whole or in part. *See Edwardsen v. Morton*, 369 F. Supp. 1359, 1371 (D.D.C. 1973) ("Neither can such intruders escape liability by asserting that officers of the United States gave them permission, so long as those officers lacked the necessary statutory authority." (citing *Cramer v. United States*, 261 U.S. 219, 234 (1923)). This is expressly recognized

---

[9] In its Petition for Panel Rehearing or for Rehearing *En Banc* to the 10th Circuit (attached as Pls.' App. at Ex. I), Enable noted that "the application of Section 169.410 in this case[] constituted the bulk of discussion at the oral argument of this case."

[10] Notably, the BIA cited no authority for its trespass assessment in its August 24, 2006 letter to Enable. (*See* Aug. 24, 2006 Letter from Betty Tippeconnie, BIA Superintendent [Dkt. 118-11].)

[11] This is in contrast to other regulations in existence at the time that allowed the BIA to assess trespass penalties in other situations, such as for violations of grazing permits on partitioned lands. *See, e.g.*, 25 C.F.R. § 161.7011 (effective January 5, 2006).

in the right-of-way trespass regulations that went into effect in 2016. Under 25 C.F.R. § 169.413, the BIA is granted authority to "take action to recover possession . . . on behalf of the Indian landowners and pursue any additional remedies available under applicable law." The regulation makes clear though that any action by the BIA does not limit the Indian landowners' rights to pursue their own claims. In the next sentence, the regulation states that "[t]he *Indian landowners may pursue any available remedies under applicable law*, including applicable tribal law." *Id*. (emphasis added).

Nor did Plaintiffs ever consent to the amount of this assessment or accept it as satisfaction of their pre-September 2006 trespass claims. To the contrary, several of the landowners "expressed their dissatisfaction with the amount of trespass money collected" at a December 21, 2007 meeting at the BIA. (Deerinwater Letter at 3.)

In sum, as the Supreme Court has recognized, the BIA "is faced with an almost staggering problem in attempting to discharge its trust obligations with respect to thousands upon thousands of scattered Indian allotments." *Poafpybitty v. Skelly Oil Co.*, 390 U.S. 365, 374 (1968). The BIA's 2006 trespass assessment likely should never have been made. Instead, the BIA should have taken action to require Enable to remove its Pipeline from Plaintiffs' property many years ago. Most likely, the BIA lacked the resources to bring an ejectment action, and making a hold-over assessment was a less burdensome option for the agency. Regardless, what the BIA did or did not do, and why, does not affect Plaintiffs' civil claims against Enable. At most, Enable may be entitled to a credit against Plaintiffs' recovery in this case. That is all. The BIA's unilateral

assessment does not in any way limit Plaintiffs' trespass claims against Enable in this Court.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter partial summary judgment in Plaintiffs' favor, and find that Enable's trespass commenced on November 19, 2000, and that Plaintiffs are entitled to recover at trial for the entire trespass period beginning on that date.

Respectfully submitted this 25th day of March 2019.

/s/ Dustin T. Greene
Dustin T. Greene
N.C. Bar No. 38193
Elizabeth L. Winters
N.C. Bar No. 44918
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7432
Fax: (336) 734-2612
dgreene@kilpatricktownsend.com
bwinters@kilpatricktownsend.com

-and-

Catherine Munson
D.C. Bar No. 985717
Keith M. Harper
D.C. Bar No. 451956
Krystalyn Kinsel
A.Z. Bar No. 0328853
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 508-5800
Fax: (202) 508-5858

cmunson@kilpatricktownsend.com
kharper@kilpatricktownsend.com


Stephanie C. Hudson
Oklahoma Bar. No. 15977
Oklahoma Indian Legal Services
4200 Perimeter Center Dr., Suite 222
Oklahoma City, OK 73112
Telephone: (405) 943-6457
Fax: (405) 917-7060
hudson@oilsonline.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2019, I electronically filed the foregoing

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING

THE DATE THAT DEFENDANTS' TRESPASS COMMENCED WITH BRIEF IN

SUPPORT with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following registered users:

Stratton Taylor
Toney D. Foster
Clint Russell
Kassie N. McCoy
Mark H Ramsey
Taylor, Foster, Mallett, Downs,
Ramsey & Russell
400 West Fourth Street
P.O. Box 309
Claremore, OK  74018
(T) (918) 343-4100
(F) (918) 343-4900

*Attorneys for Defendants*

John A. Kenney
Michael K. Avery
Michael D. McClintock
McAfee & Taft
211 North Robison
Two Leadership Square, Tenth Floor
Oklahoma City, OK  73102
(T) (405) 235-9621
(F) (405) 270-7212

*Attorneys for Defendants*

and I hereby certify that I have also mailed the foregoing document to the following

recipients:

None

Respectfully submitted, this the 25th day of March, 2019.

/s/ Dustin T. Greene
Dustin T. Greene