## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARCIA W. DAVILLA, et al. | ) | |
| | ) | |
| Plaintiffs and Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | Civ. No. 5:15-cv-01262-M |
| | ) | |
| ENABLE MIDSTREAM PARTNERS, L.P, et al. | ) | |
| | ) | |
| Defendants and Counterclaim Plaintiffs. | ) | |
| | ) | |

## <u>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Dustin T. Greene
N.C. Bar No. 38193
Elizabeth L. Winters
N.C. Bar No. 44918
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101
Telephone:  (336) 607-7432
Fax:  (336) 734-2612

Catherine Munson
D.C. Bar No. 985717
Keith M. Harper
D.C. Bar No. 451956
Krystalyn Kinsel
A.Z. Bar No. 0328853
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone:  (202) 508-5800
Fax: (202) 508-5858

Stephanie C. Hudson
Oklahoma Bar. No. 15977
Oklahoma Indian Legal Services
4200 Perimeter Center Dr., Suite 222
Oklahoma City, OK 73112
Telephone: (405) 943-6457
Fax: (405) 917-7060
hudson@oilsonline.org

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS ............ 1

III. ARGUMENT.............................................................................................. 11

A.   As this Court Previously Held, Plaintiffs Are Entitled to Pursue An
     Accounting for the Profits Made by Enable From Its Illegal Operation of
     the Pipeline. ..................................................................................... 11

     1.   This Court Already Determined the "Proper Measure of Damages"
          in This Case, at Enable's Request. .............................................. 11

     2.   An Accounting and Disgorgement of Profits Are  Unquestionably
          Available to Plaintiffs in This Case.............................................. 12

B.   Enable's Remaining Arguments Regarding Plaintiffs' Accounting Remedy
     Are Not Suited for Summary Judgment. .................................................. 17

     1.   Multiple Factual Issues Preclude Summary Judgment. ............................. 19

     2.   If the Court Engages in Equitable Balancing at this Stage,  the
          Equities Favor Plaintiffs. ........................................................... 21

C.   Enable's Efforts to Gut Plaintiffs' Disgorgement Remedy Are Meritless............. 23

D.   Plaintiffs Are Entitled to Pursue Punitive Damages at Trial................................. 26

E.   Plaintiffs Are Already Entitled to Recover Attorneys' Fees, and Any
     Further Attorneys' Fee Award Should Be Determined After Trial. ..................... 27

F.   Plaintiffs Are Entitled to Recover for the Entire Trespass Period. ....................... 29

II. CONCLUSION............................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975) ................................................................................ 22

*Allen v. Transok Pipe Line Co*.,
    552 P.2d 375 (Okla. 1976) .............................................................. 21, 26

*American Lung Association v. Browner*,
    884 F. Supp. 345 (D. Ariz. 1994) ............................................................ 18

*A-W Land Co., LLC v. Anadarko E&P Onshore, LLC*,
    No. 09-cv-02293, 2014 WL 7051161 (D. Colo. Dec. 12, 2014) ................ 23

*Bunch v. Cole*,
    263 U.S. 250 (1923) ................................................................................ 30

*Cnty. of Oneida v. Oneida Indian Nation*,
    470 U.S. 226 (1985) .......................................................................... 13, 15

*Cnty. of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*,
    502 U.S. 251 (1992) ................................................................................ 22

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962) ................................................................................ 17

*Daniels v. United Parcel Serv., Inc.*,
    701 F.3d 620 (10th Cir. 2012) ................................................................ 17

*Davilla v. Enable Midstream Partners, LP*,
    913 F.3d 959 (10th Cir. 2019) .......................................................... passim

*Enable Oklahoma Intrastate Transmission, LLC v. 25 Foot Wide Easement*,
    Case 5:15-cv-1250 ..................................................................................... 9

*Enable Oklahoma Intrastate v. 25 Foot Wide Easement*,
    908 F.3d 1241 (10th Cir. 2018) ..................................................... 9, 20, 28

*Everbrite Elec. Signs, Inc. v. Yezzi*,
    144 Wis. 2d 949 (Wis. Ct. App. 1988) .................................................... 26

*Fed. Deposit Ins. Corp. v. Cover*,
   714 F. Supp. 455 (D. Kan. 1988) ................................................................... 29

*Flandreau Santee Sioux Tribe v. South Dakota*,
   No. Civ-07-4040, 2011 WL 2551379 (D.S.D. June 27, 2011) .................................... 20

*Hammond v. City of Madera*,
   859 F.2d 797 (9th Cir. 1988) ...................................................................... 15

*In re de Jong*,
   588 B.R. 879 (9th Cir. Bankr. 2018) ............................................................... 24

*Kennedy v. Lasko Co.*,
   414 F.2d 1249 (3rd Cir. 1969) ...................................................................... 17

*Kornfeld v. Kornfeld*,
   393 F. App'x 575 (10th Cir. 2010) .................................................................. 29

*L.W. v. Grubbs*,
   92 F.3d 894 (9th Cir. 1996) ........................................................................ 15

*Mason v. Sybron Corp.*,
   955 F.2d 48 (9th Cir. 1992) ........................................................................ 27

*Perkins v. United States*,
   No. CIV-09-624-D, 2010 WL 1328722 (W.D. Okla. Mar. 29, 2010) .......................... 12

*Pine River Logging & Imp. Co. v. United States*,
   186 U.S. 279 (1902) ................................................................................ 25

*Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.*,
   941 P.2d 995 (Okla. 1997) ...................................................................... 8, 21

*SEC v. Maxxon, Inc.*,
   465 F.3d 1174 (10th Cir. 2006) .................................................................... 27

*United States v. Imperial Irrigation District*,
   799 F. Supp. 1052 (S.D. Cal. 1992) ................................................................ 14

*United States v. Milner*,
   583 F.3d 1174 (9th Cir. 2009) ..................................................................... 22

*United States v. Peister*,
   631 F.2d 658 (10th Cir. 1980) ..................................................................... 19

*United States v. Pend Oreille Pub. Utility Dist. No. 1*,
   28 F.3d 1544 (9th Cir. 1994) .................................................................... 14, 16

*United States v. S. Pac. Transp. Co.*,
   543 F.2d 676 (9th Cir. 1976) ................................................................... 23, 30

*United States v. Santa Fe Pac. Rail Co.*,
   314 U.S. 339 (1941) ................................................................................. passim

*Valley Asphalt, Inc. v. Stimpel Wiebelhaus Associates*,
   3 F. App'x 838 (10th Cir. 2001) ..................................................................... 29

*W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*,
   427 F.3d 1269 (10th Cir. 2005) .................................................................... 17

*Watson v. United States*,
   263 F. 700 (8th Cir. 1920) ...................................................................... 14, 15

*Wood v. Ostrander*,
   851 F.2d 1212 (9th Cir. 1988) ...................................................................... 15

*Zinaman v. Kingston Regional Senior Living Corp.*,
   No. 1:11-CV-388 (RFT), 2014 WL 282633 (N.D.N.Y. Jan. 23, 2014) ..................... 18

*Zippertubing Co. v. Teleflex Inc.*,
   757 F.2d 1401 (3d Cir. 1985) ....................................................................... 27

**Statutes**

25 U.S.C. § 324 ................................................................................................. 30

25 U.S.C. § 357 ............................................................................... 9, 20, 21, 28

25 U.S.C. §§ 323-328 ............................................................................... 3, 4, 21

52 Okla. Stat. Ann. §§ 22 and 27 ..................................................................... 28

66 Okla. Stat. §§ 50-60 .................................................................................... 28

Okla. Stat. Tit. 12 § 696.4 ................................................................................ 28

Okla. Stat. Tit. 66, § 55(D) ............................................................................... 28

**Rules and Regulations**

25 C.F.R. § 169.118(a)(1) (2016) ....................................................................... 3

iv

25 C.F.R. § 169.19 (1980) .................................................................................. 4, 5

**Other Authorities**

Joel Eichengrun, REMEDYING THE REMEDY OF ACCOUNTING, 60 Ind. L. J.
    3, 469 (1985) ...................................................................................... 25

*Pend Orielle County Public Utility District No. 1*, 135 F.3d 602 ("*Pend
    Orielle II*") (9th Cir. 1998) .............................................................. 16

REMEDY OF ACCOUNTING at 470 ...................................................................... 25

Rest. (3d) of Restitution § 51 (2011) ............................................................ 27

Rest. (3d) of Restitution § 51(5)(d) .............................................................. 25

Rest. (Third) of Restitution § 40 cmt. .................................................... 22, 23

Rest. (Third) of Restitution and Unjust Enrichment § 51 cmt. ........................ 24

Restatement (Second) of Torts § 929 (1979) ................................................ 22

Restatement of Torts ...................................................................................... 22

## I.   INTRODUCTION

Despite having lost both of its attempts to take Plaintiffs' land by condemnation, Enable now contends that this Court should create a form of private eminent domain that is contrary to multiple federal statutes, whereby Plaintiffs are forced to accept Enable's offer to lease their property for the past nineteen years at $40 per rod rental rate—the precise offer Plaintiffs repeatedly refused in the past, and which the Bureau of Indian Affairs found was unreasonable for this land—simply because Enable willfully trespassed and refused to vacate the property. Enable's arguments are not supported by the facts or the law, which affords Indian trust land heightened protection and requires that Enable account for and disgorge the profits it made through its illegal trespass.

Beyond its efforts to circumvent the controlling federal Indian law in this case, the remainder of Enable's brief raises arguments that should be made to a jury at trial. Indeed, the majority of Enable's brief is dedicated to pre-litigating damages issues where there are expert testimony and facts on both sides, and Enable does not contend that Plaintiffs' expert report regarding damages is not admissible or well-supported. There are also numerous issues of fact, some created by Enable's changes in position throughout this case, that must be resolved by a jury. For all of these reasons, and as further explained below, Enable's motion for summary judgment should be denied.

## II.   PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF FACTS

1.     Admitted.

2.     Admitted. As the Tenth Circuit has already determined, the easement required the holder to " 'install ... and remove' the pipeline within a term of twenty

years." *Davilla v. Enable Midstream Partners, LP*, 913 F.3d 959, 969 ("*Davilla III*")

(10th Cir. 2019); *see also* Enable's Ex. 1.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted, it being further clarified that Enable ceased using the section of

Pipeline across Plaintiffs' property in November 2018, but the unused pipeline remains in

place on Plaintiffs' land. Declaration of Preston Soell ("Soell Decl.") [Dkt. 135-1 at 3].

7.      Admitted, it being further clarified that Enable's Director of Rights-of-Way

testified that Enable was aware that TransOK had an "almost nonexistent record-keeping

system of real property documents." Deposition of Brian Green ("Green Dep.") 28:8-14[1].

8.      Admitted.

9.      Admitted.

10.      Admitted.

11.      Plaintiffs object to this statement as a mischaracterization that it was not

possible to do due diligence on TransOK's rights-of-way prior to the acquisition. Enable

was under no compulsion to buy the pipeline or to rush its due diligence. Enable has

presented no evidence that it was not possible to do due diligence prior to the acquisition.

12.      Plaintiffs object to this statement as a mischaracterization that it was not

possible to do due diligence on TransOK's rights-of-way prior to the acquisition. Enable

---

[1] Exhibits and deposition excerpts cited herein are included in the attached Appendix.

was under no compulsion to buy the pipeline or to rush its due diligence.

13.    Plaintiffs object to this statement as inaccurate. Enable never submitted a valid renewal application as required by the Indian Right of Way Act, 25 U.S.C. §§ 323-328, and the supporting regulations. It submitted an application that was not supported by any landowner consents, and then belatedly attempted to get those consents after the fact. Green Dep. 32:2-35:19, Ex. 8; *see also Davilla III*, 913 F.3d at 966-68. Enable also has not presented evidence that it could not have reviewed TransOk's easement records and discovered the expiration of the easement prior to closing.

14.    Plaintiffs object to this statement. Enable cites regulations that did not go into effect until April 21, 2016.[2] Further, the regulations cited do not restrict right-of-way compensation to land value—they specifically allow for "payments based on throughput or percentage of income." 25 C.F.R. § 169.118(a)(1) (2016). This valuation method is consistent with the remedies Plaintiffs seek in this case.

15.    Admitted.

16.    Admitted.

17.    Admitted, it being clarified that Plaintiffs repeatedly rejected the $40/rod offer to renew the easement and the Regional Director for the Bureau of Indian Affairs ("BIA") later determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

18.    Admitted.

19.    Admitted, it being clarified that Plaintiffs repeatedly rejected the $40/rod

---

[2] Enable consistently cites regulations not in effect when the underlying events occurred.

offer to renew the easement and the BIA's Regional Director later determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

20.     Admitted, it being clarified that Plaintiffs repeatedly rejected the $40/rod offer to renew the easement and the BIA's Regional Director later determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

21.     Admitted, it being clarified that Plaintiffs repeatedly rejected the $40/rod offer to renew the easement and the BIA's Regional Director later determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

22.     Plaintiffs object to this statement. Mrs. Palmer did not testify that the amount offered by Enable was reasonable or valid. She testified that "the BIA, they just had a set right-of-way amount usually, as compared to, you know, maybe other landowners." Deposition of Mayredean Palmer ("Palmer Dep.") 15:9-11.

23.     Admitted, it being clarified that the application submitted in 2002 was not supported by any landowner consents and did not comply with the Indian Right of Way Act §§ 323-328 and the regulations. Green Dep. 32:2-35:19.

24.     Plaintiffs dispute this statement. The regulations in effect at the time required applications for renewal to be submitted prior to the expiration of the right-of-way, and Enable offers no justification for not submitting an application or obtaining landowner consents until after its right-of-way expired. 25 C.F.R. § 169.19 (1980) ("On or before the expiration date of any right-of-way heretofore or hereafter granted for a limited term of years, an application may be submitted for a renewal of the grant.").

25.     Plaintiffs dispute this statement. The regulations in effect at the time

required applications for renewal to be submitted prior to the expiration of the right-of-way, and Enable offers no justification for not submitting an application or obtaining landowner consents until after its right-of-way expired. 25 C.F.R. § 169.19 (1980).

26.     Admitted.

27.     Plaintiffs dispute this statement to the extent Enable contends that it was not possible to begin the renewal process until four years after the right-of-way expired. The regulations in effect at the time required applications for renewal to be submitted prior to the expiration of the right-of-way. 25 C.F.R. § 169.19 (1980).

28.     Admitted, it being clarified that Mr. Green testified that Enable was well-aware of the delays in dealing with the BIA, but failed to take any steps to procure a timely renewal of its right-of-way in light of that knowledge. Green Dep. 36:11-37:13.

29.     Admitted. The Tenth Circuit has held that consents from five landowners with a minority interest is no defense to trespass. *Davilla III*, 913 F.3d at 966-68.

30.     Admitted.

31.     Admitted, it being clarified that the BIA's Regional Director later determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

32.     Admitted.

33.     Admitted.

34.     Admitted.

35.     Admitted, it being clarified that the BIA's Regional Director later determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

36.     Admitted, it being clarified that the BIA's Regional Director later

5

determined that the $40/rod valuation was inadequate. Enable's Br., Ex. 24.

37.     Admitted.

38.     Admitted.

39.     Plaintiffs dispute Mr. Green's testimony regarding the value of rights-of-way in this area. Enable has produced documentation showing that it has paid substantially higher amounts for rights-of-way across tracts adjacent to Plaintiffs' land. Pls.' App., Exs. M-O[3]; Gray Report, Ex. 4.

40.     Admitted.

41.     Plaintiffs admit that this letter was produced. However, Marcie Davilla further testified that she did not know anything about the BIA's request for an appraisal to determine a trespass assessment, that the BIA assessed a trespass penalty, or that any payment had been made by Enable. Deposition of Marcie Davilla ("M. Davilla Dep.") 57:5-61:5. Other landowners testified similarly. *See* Deposition of Patricia Carter-Files ("Carter-Files Dep.") 41:1-43:19; Deposition of Corey Ware King ("King Dep.") 32:6-13; Palmer Dep. 45:9-12.

42.     Admitted.

43.     Admitted, it being clarified that the landowners were not aware of this assessment (*see* Resp. to ¶ 41, above), and the BIA did not have the power to authorize an extension or renewal of Enable's right-of-way without majority landowner consent under the Indian Right-of-Way Act. *See* Pls.' Mot. for Partial Summ. J. [Dkt. 135] at 18-21.

---

[3] Enable has designated these document as "Confidential," and Plaintiff is thus filing them under seal.

44.     Plaintiffs object to this statement because, as stated in response to ¶ 41, and in their response to Enable's discovery requests (Enable's Br., Ex. 23), Plaintiffs have no knowledge of these payments. Regardless, as stated in response to ¶ 43, the BIA had no authority to authorize an extension of Enable's right-of-way.

45.     Plaintiffs admit that the BIA made the referenced statement, but object to the accuracy of that statement or that it has any effect on this case on the same grounds set-forth in response to ¶¶ 41, 43 and 44, above.

46.     Admitted.

47.     Plaintiffs dispute this statement because it attempts to blame the BIA for Enable's trespass. Enable did not directly try to contact any of the landowners; it worked through landmen that were only compensated when a renewal was approved. Deposition of John Coury ("Coury Dep.") 12:22-13:5, 33:7-14. Once those landmen were informed that Marcie Davilla was not going to consent to a renewal at $40/rod, they "knew there [wa]s no way [they were] going to get 51 percent of the ownership to agree to consent to the renewal[, s]o there was no need in trying to go and get the other owners to sign and send in their paperwork." Deposition of Gilbert Miles ("Miles Dep.") 38:18-39:14. The landmen eventually "gave … up" trying to contact the BIA or the landowners because they understood that "nobody else was going to send their consent forms in." *Id*. at 57:17-58:17. Moreover, despite the landowners' repeated rejections of Enable's $40/rod offer, Enable never made any offer to the landowners other than $40/rod, and no one at Enable even asked for authority to make a higher offer. Green Dep. 46:19-47:18, 66:22-67:10; Coury Dep. 34:20-35:2, 36:19-37:18; Miles Dep. 38:18-39:12, 43:3-20.

48.     Plaintiffs admit that Enable frequently remains on Indian trust land for years after its easements expire. Plaintiffs dispute that anyone other than Enable is responsible for those trespasses for the reasons stated in response to ¶ 47.

49.     Plaintiffs dispute this statement for the reasons stated in response to ¶ 47.

50.     Plaintiffs dispute that there was any "optimism" by Enable regarding a renewal for the reasons stated in response to ¶ 47, but admit that Enable intended to file a condemnation action if Plaintiffs did not accept their $40/rod offer. There are disputes of fact about whether Enable had the ability to condemn the easement in 2007. Enable's witnesses have testified that the pipeline system could have been operated without the section crossing Plaintiffs' land. Soell Dep. 28:12-17. If Plaintiffs' property was not necessary to Enable's business, Enable did not have the power to take that property through eminent domain. *See Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.*, 941 P.2d 995, 999 (Okla. 1997).

51.     Admitted.

52.     Plaintiffs dispute this statement. Marcie Davilla testified that she does not recall any communication ever being made to her by the BIA or Enable that Enable intended to condemn Plaintiffs' property at this time. M. Davilla Dep. 85:15-87:22.

53.     Admitted.

54.     Plaintiffs dispute this statement. Contemporaneous communications show that Enable always intended to attempt to condemn Plaintiffs' property if Plaintiffs did not accept Enable's $40/rod offer. Green Dep. at 48:1-7, 51:9-52:7, 55:14-56:24, Ex. 11 (February 15, 2008 letter from BIA to B. Green indicating that Enable had made the

decision to condemn the property prior to January 30, 2008), Ex. 12 (April 28, 2008 email from J. Burrell to J. Coury and B. Green (stating "I guess they didn't want [the property] condemned"). Enable also filed an eminent domain action after being contacted by Plaintiffs' counsel about the trespass, indicating no willingness to negotiate. (Enable's Br., Ex. 32; *see also Enable Oklahoma Intrastate Transmission, LLC v. 25 Foot Wide Easement*, Case 5:15-cv-1250 [Dkt. 1]).[4] The only communication to any of the landowners or their family members about condemnation was as a threat. LaDonna "Donna" Davilla, Marcie Davilla's daughter, testified that the BIA stated, "[y]ou can take the $40 or they can take your land." Deposition of LaDonna Davilla ("D. Davilla Dep.") at 70:9-14. "It was more like a threat." *Id*.

55.    Admitted, it being clarified that this application was also not supported by the required landowner consents.

56.    Admitted.[5]

57.    Admitted, it being clarified that this approval was invalid, as later determined by the BIA's Regional Director. (Enable's Br. ¶ 61, Ex. 24.)

58.    Admitted.

59.    Admitted.

---

[4] Enable filed CIV-15-1250-L to condemn an easement across Plaintiffs' land under 25 U.S.C. § 357. That action, along with the parallel condemnation counterclaim in this case, was dismissed on August 19, 2016. (*See* Dkts. 55, 80 in CIV-15-1250-L.) The Tenth Circuit affirmed the dismissal of Enable's stand-alone condemnation suit on November 15, 2018. *Enable Oklahoma Intrastate v. 25 Foot Wide Easement*, 908 F.3d 1241 (10th Cir. 2018).
[5] There are disputes of fact about whether Enable had any ability to condemn the easement in 2007 that it could have "lost." *See* response to ¶ 50.

60.    Admitted.

61.    Admitted.

62.    Plaintiffs dispute this statement. Enable was unquestionably informed of this decision at least when this action was filed, but persisted in trespassing nonetheless. (Compl. [Dkt. 1] ¶ 23.) Plaintiffs further dispute that any notice to Enable was necessary. The Tenth Circuit has held that "the easement's expiration created a duty to remove the pipeline. Permission to lay and maintain the pipeline came hand-in-hand with an obligation to remove it … Indeed, there would have been no sense in limiting the easement term to twenty years otherwise." *Davilla III*, 913 F.3d at 969.

63.    Admitted.

64.    Admitted.

65.    Admitted.

66.    Admitted.

67.    Admitted.

68.    Plaintiffs dispute this statement to the extent it suggests that a demand to remove the pipeline was necessary, for the reasons stated in response to ¶ 62.

69.    Plaintiffs dispute this statement because there is an issue of fact regarding Enable's ability to operate its pipeline without the section across Plaintiffs' property. Enable has twice pled (once it its stand-alone condemnation action and again in its condemnation counterclaim in this case) that this section of pipeline was "necessary to or required by its business purposes." Complaint in CIV-15-1250-L ¶ 3; Dkt. 7 ¶ 2.

70.    Plaintiffs object to Enable's characterization of the effect of the pipeline's

10

presence on Plaintiffs' ability to use and enjoy their land. Benjamin Blackstar testified that Enable's refusal to remove the pipeline has interfered with his enjoyment of the property. Benjamin Blackstar Deposition ("B. Blackstar Dep."). Other Plaintiffs testified similarly. Deposition of Thomas Blackstar ("T. Blackstar Dep.") 47:7-48:12; Deposition of Mari Keahbone ("M. Keahbone Dep.") 46:18-23 (testifying that Enable has interfered with Plaintiffs' right to decide who can and cannot be on their property).

## III.   ARGUMENT

### A.   As this Court Previously Held, Plaintiffs Are Entitled to Pursue An Accounting for the Profits Made by Enable From Its Illegal Operation of the Pipeline.

This motion is not Enable's first effort to avoid the well-established remedy of an accounting and disgorgement of profits for trespass to Indian trust land. This Court already rejected Enable's arguments. Enable's current motion fares no better.

#### 1.   This Court Already Determined the "Proper Measure of Damages" in This Case, at Enable's Request.

Plaintiffs' entitlement to pursue an accounting and disgorgement of the profits made by Enable through its trespass was already litigated by the parties, and Enable's arguments to avoid that remedy were rejected. Enable asked the Court for permission to file a Motion to Determine the Proper Measure of Damages, based on facts that were stipulated to by the parties, at a status conference on March 1, 2016. (*See* Dkt. 24 (Order setting briefing schedule for Enable's "motion to determine the proper measure of damages"); Dkt. 22 (Joint Status Report and Stipulated Facts).) Enable filed its Motion to Determine Proper Measure of Damages shortly thereafter. [Dkt. 31].

This Court granted Enable's request that it make a determination about the available remedies, but then rejected all of Enable's arguments that Plaintiffs cannot pursue an accounting for profits. (*See* Dkt. 51 at 5.) The Court held "there is clear case law setting forth what remedies are available under federal common law for trespass on Indian land," and held that those remedies including Plaintiffs' requested "accounting." (*Id*. at 5, n. 2 (citing, *United States v. Santa Fe Pac. Rail Co.*, 314 U.S. 339, 359 (1941)).)

Enable makes no effort to show that it has met the standard for reconsideration of that order. "When utilizing a Rule 59(e) motion to submit additional evidence, the movant must show either that the evidence is newly discovered or ***if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence***." *Perkins v. United States*, No. CIV-09-624-D, 2010 WL 1328722, at *1 (W.D. Okla. Mar. 29, 2010) (quoting *Cmte. for First Am. v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992) (emphasis added, internal alteration omitted)). All of the evidence in this case was available when Enable filed its prior motion. That Enable regrets its earlier strategy is not grounds to re-litigate this issue.

### 2.     An Accounting and Disgorgement of Profits Are Unquestionably Available to Plaintiffs in This Case.

There is also no question that the Court's prior order correctly held that Plaintiffs are entitled to an accounting. Enable's current motion largely relies on cases that do not involve Indian land claims, and thus ignores the rules that apply to this case. Indeed, Enable entirely ignores the controlling Supreme Court decisions that address the remedies for trespass to Indian trust land, and Enable misconstrues the handful of federal

Indian law decisions that it does cite.

The seminal decision for Indian trespass claims and the accounting remedy is *United States v. Santa Fe Pacific Rail Company*, 314 U.S. 339 (1941). In *Santa Fe*, the United States (as trustee for the Walapai Tribe in Arizona) brought an action to quiet title, for an injunction, and for an "account[ing] for all rents, issues and profits derived from the leasing, renting or use of the lands subject to said right of occupaycy' [sic] by the Indians" against a railroad. *Id.* at 344, 347. The allegation was that the defendant's easement across the Tribe's land, which had been in use for operation of a railroad line since 1866 (more than 70 years), was invalid. *Id.* The district court granted the rail company's motion to dismiss the complaint, and the Court of Appeals affirmed. *Id.* at 344. Contemporaneously with the filing of the petition for certiorari, the defendant quitclaimed its easement to the United States, mooting the quiet title and injunction issues. *Id.* at 358-59. However, the Supreme Court held that the defendant should be required to provide the requested accounting for its past use of the easement, determining that the conveyance of the easement was not valid. *Id.* at 359. Thus, the Court ordered that the trial court's decree "must be modified so as to permit the accounting …." *Id.*

Significantly, the Supreme Court did not instruct the lower court to weigh the equities or make a further decision about whether the Indian landowners in that case were entitled to an accounting. It held that the decree "***must*** be modified so as to permit the accounting …." *Id.* (emphasis added). Subsequent decisions reaffirm that "Indians have a common-law right of action for ***an accounting of all rents, issues and profits*** against trespassers on their land." *Cnty. of Oneida v. Oneida Indian Nation* ("*Oneida II*"), 470

U.S. 226, 234 (1985) (emphasis added); *United States v. Pend Oreille Pub. Utility Dist. No. 1* ("*Pend Orielle I*"), 28 F.3d 1544, 1549 n.8 (9th Cir. 1994) (same).

This rule applies to Plaintiffs' land, which is held in trust by the United States, because Indian trust land is subject to higher protections than land that is held in fee simple by an ordinary landowner. As the Supreme Court noted in *Santa Fe*, "[u]nquestionably it has been the policy of the federal government from the beginning to respect the Indian right of occupancy, which could only be interfered with or determined by the United States." 314 U.S. at 345.

Enable cites only a handful of cases dealing with trespass to Indian land. None were decided at summary judgment, and none support Enable's arguments about the proper measure of damages in this case. In *Watson v. United States*, 263 F. 700 (8th Cir. 1920),[6] each of the plaintiffs' causes of action sought "to recover the reasonable rental value of pasture lands." *Id*. at 701. Thus, *Watson* did not address the accounting for profits remedy. *Watson* was also decided under an Oklahoma statute that "provide[d] for the recovery of the value of the use of real property ...." *Id*. at 702. The Tenth Circuit has held that state law does not apply to the remedies in this case. *Davila III*, 913 F.3d at 972 ("the district court erred in applying Oklahoma rather than federal remedial law").

Similarly, in *United States v. Imperial Irrigation District*, 799 F. Supp. 1052 (S.D. Cal. 1992), "[t]he parties agree[d] that the proper measure of damages for trespass [was] the fair rental value of the property ...." *Id*. at 1066. *Imperial* has nothing to do with

---

[6] Enable's Br. at 24 n. 11.

federal law on accounting for profits.

Enable also cites *Hammond v. City of Madera*, 859 F.2d 797 (9th Cir. 1988).[7] (Enable's Br. at 23-24). *Hammond* is easily distinguishable because the plaintiffs attempted to obtain disgorgement of profits earned through the development of a subdivision that was not owned by defendants, and was ***not on the plaintiffs' property***. The trespass in *Hammond* was the construction of access roads across plaintiffs' property. 859 F.2d at 800. At trial, the court awarded the plaintiffs' the rental value of their land. *Id*. at 801, 803. Plaintiffs appealed, arguing that they should have been allowed to recover ***the County's*** profits (higher property taxes and building permit fees) related to the development of a subdivision accessed by the road. *Id*. at 803-04. However, the subdivision itself was not on the plaintiffs' property. Because "appellants never owned the Sierra Lakes subdivision and thus had no right to develop it," disgorgement of profits (tangentially) related to the subdivision was denied. *Id*. at 804. Unlike the County in *Hammond*, Enable has been directly using Plaintiffs' property for commercial gain, and the accounting for profits remedy directly applies under *Santa Fe*.[8]

Finally, Enable cites *Pend Oreille I*. (Enable's Br. at 24 n. 11). But *Pend Oreille I* actually defeats Enable's arguments. There, the United States sued a hydro-electric utility for flooding part of the Kalispel Indian Reservation in Washington state, without

---

[7] *Hammond* was abrogated on other grounds by *Wood v. Ostrander*, 851 F.2d 1212 (9th Cir. 1988). *See L.W. v. Grubbs*, 92 F.3d 894, 898 (9th Cir. 1996).

[8] The court in *Hammond* also based much of its damages analysis on California state law, or decisions such as *Watson* and *Oneida II*, where the plaintiffs only sought rental value and did not pursue an accounting remedy. *See id*. at 804.

complying with the Federal Power Act. *Pend Oreille I*, 28 F.3d at 1547-48. The trial

court "concluded Washington law controlled and under that law the Tribe was entitled to

recover only the rental value of the land for grazing"—the measure of damages

advocated by Enable in this case. *Id*. at 1549. The Ninth Circuit reversed, holding that

"[t]he damage calculation urged by the Utility would encourage others to use Indian

reservation lands for power production without complying with [federal law]." *Id*. at

1551. Thus, *Pend Oreille I* definitively rejects Enable's proposed measure of damages.

The Ninth Circuit also held that the plaintiffs were entitled to recover for the

trespass "based upon the commercial value of the tribal lands involved, for the most

profitable purposes for which suitable, including power development." *Id*. at 1550. The

Ninth Circuit also addressed that damages measurement four years later in *Pend Orielle

County Public Utility District No. 1*, 135 F.3d 602 ("*Pend Oreille II*") (9th Cir. 1998),

following the trial after remand from *Pend Orielle I*. During that trial, the district court

calculated damages based on a multi-factor test known as the "power site formula." *Id*. at

608. On the second appeal, the utility again argued that the plaintiffs' damages should be

calculated based on a "land appraisal method." *Id*. The Ninth Circuit again rejected this

argument and held that the trial court appropriately "chose the sharing of the net benefits

approach" to calculate the "power site value" of the land at issue. *Id*. at 608-09. Because

the "power site formula" is specific to hydropower plant cases, it does not apply here.

However, the purpose is the same—to determine the "net benefits" of the power plant's

operation to the utility and to allocate a portion of those benefits to the landowners. *See

id*. at 609. This is precisely the purpose served by the accounting remedy sought here.

16

B.  **Enable's Remaining Arguments Regarding Plaintiffs' Accounting Remedy Are Not Suited for Summary Judgment.**

The remainder of Enable's brief raises factual arguments that require resolution at trial, including resolving disputed issues of fact, weighing competing equitable considerations, and calculating damages. At summary judgment, courts "must not judge witness credibility or weigh evidence." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). "*All evidence*" must be construed and "*all inferences*" must be drawn in favor of the non-movant. *Davilla III*, 913 F.3d at 965 (emphasis added). Accordingly, courts cannot decide application of equitable remedies at summary judgment "except, of course, for the very unusual situation when all the equities are indisputably on one side." *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005) (reversing grant of summary judgment on accounting for profits claim in a trademark case).

It is not clear whether Enable contends that the Court should cut straight to the damages calculations because this case would be tried without a jury, but that would be incorrect. "While it is true that equity traditionally has had jurisdiction in actions for an accounting, it has always been recognized that there may be a suit for an accounting at law and indeed the essential ingredient of equity's jurisdiction has been the complicated nature of an accounting." *Kennedy v. Lasko Co.*, 414 F.2d 1249, 1252-53 (3rd Cir. 1969) (reversing district court's decision to strike plaintiffs' jury trial demand in action for accounting of profits for patent infringement); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 476-78 (1962) (holding that claim for an "accounting" seeking a money

judgment "is unquestionably legal" and is to be resolved by a jury unless the accounts are

of "such a complicated nature that only a court of equity can satisfactorily unravel

them"). Here, the accounting issues are straightforward, and nothing justifies taking the

damages issue away from a jury, which will also have to decide legal damages issues,

including the amount to be awarded to Plaintiffs to remove Enable's pipeline, which

currently remains buried, but unused, on the property.

Enable cites two cases to argue the Court should resolve damages issues at

summary judgment. (Enable's Br. at 17-18). Neither supports its position. *American Lung

Association v. Browner*, 884 F. Supp. 345 (D. Ariz. 1994), involved a grant of summary

judgment in the plaintiffs' favor against the Environmental Protection Agency, after the

EPA admitted violations of its mandate under the Clean Water Act. *Id*. at 346. Once

summary judgment was established for the plaintiffs, the court fashioned equitable relief

in the form of an injunction requiring the EPA to take certain actions to comply with the

Act. *Id*. at 347-49. The court did not calculate any monetary relief.

In *Zinaman v. Kingston Regional Senior Living Corp*., No. 1:11-CV-388 (RFT),

2014 WL 282633 (N.D.N.Y. Jan. 23, 2014), an employment case, the court held that it

could not rule as to the availability of back pay as an equitable remedy before trial

because "whether a rejection [by the employee of the offer of other employment] is

determined by the reasonable person standard," and it is thus "incumbent upon the trier of

fact to weigh the evidence to determine whether a reasonable person would refuse the

offer of reinstatement." *Id*. at *1-2.

Here, there are factual issue in dispute, credibility issues to be resolved, and

damages calculations to be performed by a jury. None of these issues is subject to resolution at summary judgment.

### 1.   Multiple Factual Issues Preclude Summary Judgment.

Even if Enable's arguments against disgorgement were not precluded by the clear mandate in *Santa Fe* (which they are), there are disputes of fact that cannot be resolved on summary judgment. First, Enable attempts to excuse its initial trespass based on the backlog in processing TransOK's easements. (Enable's Br. at 4, 18-19.) But this is no excuse. Enable was under no compulsion to purchase the pipeline, or to take short-cuts in its due diligence. Additionally, when Enable purchased the pipeline, it was aware that the seller had an "almost nonexistent record-keeping system of real property documents." (Green Dep. 28:10-11.) Knowing this, Enable did not do any additional due diligence to determine where the pipeline was already in trespass, or which easements were about to expire. (*See id*. at 20:13-19.) After the acquisition, Enable continued to rely on the TransOK employee responsible for the "nonexistent record-keeping system" to manage easement renewals. (*Id*. at 21:9-19.) Enable's willful lack of knowledge about expired easements was its own fault.

Second, Enable contends that an accounting is not warranted because it was negotiating in good faith for a new easement.[9] (Enable's Br. at 19-22.) The facts

---

[9] Plaintiffs have moved for summary judgment on the date Enable's trespass accrued, in part because there is no issue of fact that Enable was ***not*** negotiating in good faith. [Dkt. 135.] If that motion is denied, then Enable's "good faith" or reasonableness would need to be determined by a jury. *See United States v. Peister*, 631 F.2d 658, 664 (10th Cir. 1980) (good faith and reasonableness are jury questions when there are disputed facts).

contradict Enable's self-serving narrative. Enable never made any offer to renew the easement other than $40/rod, and no one at Enable even asked to make a higher offer. (Green Dep. 46:19-47:18, 66:22-67:10; Coury Dep. 34:20-35:2, 36:19-37:18; Miles Dep. 38:18-39:12, 43:3-20.) Instead of negotiating, Enable simply planned to take the land by condemnation if Plaintiffs did not accept the $40/rod offer. (Green Dep. at 48:1-7, 51:9-52:7, 55:14-56:24, Ex. 11, Ex. 12.) That is exactly what Enable unsuccessfully tried to do after receiving a letter from Plaintiffs' counsel. *See Enable Okla. Intrastate v. 25 Foot Wide Easement*, 908 F.3d 1241 (10th Cir. 2018). Enable's "take it or leave it" tactics do not constitute good faith negotiations. *Flandreau Santee Sioux Tribe v. South Dakota*, No. Civ-07-4040, 2011 WL 2551379, at *3 (D.S.D. June 27, 2011) ("Good faith 'presupposes a desire to reach ultimate agreement' and not simply 'an attitude of take it or leave it.'") (citation omitted).

Enable also states that it "forwent the right to condemn an easement on the Property at a time when it had a legal right to seek this relief"—i.e. prior to the Kiowa Tribe acquiring an interest in the allotment in 2008.[10] (Enable's Br. at 20, 22.) Enable's position appears to be that because it allegedly could have condemned the easement, but did not, this shows good faith or excuses its trespass. This is incorrect. "[A] public utility invested by law with the power to exercise the right of eminent domain is not thereby clothed with an immunity not possessed by others who trespass on the property or rights

---

[10] The Tenth Circuit held that the Tribe's interest precluded condemnation under 25 U.S.C. § 357. *25 Foot Wide Easement*, 908 F.3d at 1245. Because Enable's condemnation claim failed under § 357, other defenses were not addressed.

of private citizens … to hold otherwise would bring about the legalization of willful and wanton trespass…." *Allen v. Transok Pipe Line Co.*, 552 P.2d 375, 381-82 (Okla. 1976).

There is also a factual question about whether Enable could have condemned this easement prior to 2008. In Oklahoma, "private property may not be taken or damaged by the condemning agency unless the taking or damage is ***necessary*** for the accomplishment of a lawful public use." [11] *Pub. Serv. Co. of Okla.*, 941 P.2d at 999 (emphasis added). To satisfy the necessity element, Enable pled in its counterclaim, subject to Rule 11, that this easement was "necessary to or required by its business purposes." [Dkt. 7 ¶ 2.]

However, Enable now contends that this section of pipeline and the related easement are ***not necessary*** to its business. (Enable's Br. at 16 (citing Sorrell Dep. at 28:12-17).) Thus, Enable's own pleadings and testimony create a fact question regarding its ability to exercise eminent domain to take Plaintiffs' property at any time.

### 2.     If the Court Engages in Equitable Balancing at this Stage, the Equities Favor Plaintiffs.

Plaintiffs have already obtained summary judgment on liability for Enable's trespass, and are entitled to pursue an accounting for profits. The only issue left is for a jury to calculate those profits. However, even if the Court accepts Enable's invitation to further weigh equitable considerations, the equities weigh in Plaintiffs' favor.

First, because Plaintiffs' trespass claim is based on Enable's violation of the federal statutory scheme governing use of Indian trust land—the Indian Right of Way

---

[11] 25 U.S.C. § 357 allows condemnation of lands allotted in severalty to Indians, but condemnation proceedings must be brought "under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned."

Act, 25 U.S.C. §§ 323-328—the Court "must exercise [its equitable] power in light of the large objectives of the Act." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975). The purpose of the Indian Right of Way Act is to protect Indian land rights, which have been systematically abused. *See Davilla III*, 913 F.3d at 963-64; *Cnty. of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 254-56 (1992) (recounting the historic abuse of Indian land rights). Limiting Plaintiffs' recovery to rental value, as Enable has requested, would condone Enable's trespass, and effectively nullify the earlier rulings in this case dismissing Enable's condemnation claims. Under this approach, Enable would be able to force Indian landowners to accept rental value for their land, against the landowners' will, simply by trespassing. This would be contrary to the purpose of the Indian Right of Way Act, and would not be equitable.

Second, Enable was not an innocent trespasser. It knew full well that its easement expired, and it continued to use Plaintiffs' land at its own risk. "[I]f the defendant is a willful trespasser, the owner is entitled to recover from him the value of any profits made by the entry." Restatement (Second) of Torts § 929 (1979).[12] And, the "[e]nrichment resulting from intentional trespass is not properly measured by ordinary rental value. A conscious wrongdoer will not be left on parity with a person who—pursuing the same objectives—respects the legally protected rights of the property owner." Rest. (Third) of Restitution § 40 cmt. b (2011). "If the liability in restitution were limited to the price that

---

[12] "Federal common law … generally comports with the Restatement of Torts." *United States v. Milner*, 583 F.3d 1174, 1182-83 (9th Cir. 2009). And, Enable has contended that the Restatement's rules should apply to this case. *Davilla III*, 913 F.3d at 969.

would have been paid in a voluntary exchange, the calculating wrongdoer would have no incentive to bargain." *Id.*; *see also A-W Land Co., LLC v. Anadarko E&P Onshore, LLC*, No. 09-cv-02293, 2014 WL 7051161, at *3 (D. Colo. Dec. 12, 2014) ("a defendant who trespasses in knowing disregard of the plaintiff's rights can be compelled to disgorge the full benefit or gain accrued to the defendant").

Finally, the passage of time does not weigh in Enable's favor. If anything, the fact that Enable has trespassed for nearly two decades demonstrates the willfulness of the trespass. There was no acquiescence by Plaintiffs to Enable's presence on the property— they consistently rejected Enable's renewal offers, and brought suit once they were able to find counsel that would represent them, once it became clear the BIA would not do so. Moreover, the federal policy of protecting Indian land from trespass overwhelms any competing concerns. *See United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 699 (9th Cir. 1976) (remanding Indian trespass claims after "90 years of acquiescence by the owners" because "an even older policy of Indian law compels this result."). In sum, Enable's equitable consideration arguments are without merit, to the extent that they even relevant.

### C.  Enable's Efforts to Gut Plaintiffs' Disgorgement Remedy Are Meritless.

Enable also attempts to pre-litigate the calculation of damages in this case. (Enable's Br. at 25-30.) The calculation of the disgorgement amount is a question for trial, not summary judgment. Regardless, Enable's arguments are misplaced.

Enable argues that is there is allegedly "no causal nexus" between its trespass and its revenues, based on its new-found assertion that it could have operated its pipeline without this section. (Enable's Br. at 26-27.) "That a trespasser could have earned some

23

or all of [its] profits without trespassing does not negate the fact that these net profits were earned by trespassing." *In re de Jong*, 588 B.R. 879, 893-94 (9th Cir. Bankr. 2018) (holding that trial court erred by reducing profit disgorgement award by the percentage of the defendant's business that allegedly could have been conducted elsewhere during the trespass). There is no question that Enable in-fact used Plaintiffs' land to operate its pipeline system and generate a profit during the trespass period. (Soell Dep. 40:5-8 (testifying that the section of pipeline across Plaintiffs' land was consistently in use since 2000).) What Enable could hypothetically have done, but did not do, is irrelevant.[13] *See* Rest. (Third) of Restitution and Unjust Enrichment § 51 cmt. f (2011) ("Absence of but-for causation does not necessarily exonerate the wrongdoer" because it is always possible to argue that there was another way to make the profits).

Enable cites cases decided under various state laws to argue that it should not have to pay disgorgement because Plaintiffs could not operate a pipeline. (Enable's Br. at 27.) Those cases are inapplicable because federal Indian law, not state law, governs the remedies in this case. *Davilla III*, 913 F.3d at 972. The Supreme Court did not require the Indian landowners in *Santa Fe* to demonstrate that they could operate a railroad. It held that the lower court's decree "must" be modified to permit the accounting, because Indian land is afforded a higher level of protection from trespass. 314 U.S. at 359.

Enable also does not address, or confuses, the burden of proof for an accounting for profits. In these situations, the defendant has the information about its operations,

---

[13] As discussed *supra*, there is a factual/credibility issue on this argument, given that Enable previously pled that this section of pipeline was necessary to its business operations.

expenses and other amounts it claims should be deducted from the overall benefits it earned from its wrongdoing. Therefore, "the burden of proof is allocated to the plaintiff on certain fact issues and to the defendant on others." Joel Eichengrun, REMEDYING THE REMEDY OF ACCOUNTING, 60 Ind. L. J. 3, 469 (1985) (hereafter "REMEDY OF ACCOUNTING"). The plaintiff must "prove all gross amounts claimed from the defendant" and the defendant has "the burden of proof to establish expenses, losses, or other deductions which it is claimed reduce the amount due the plaintiff." *Id*. at 469-70; *see also Pine River Logging & Imp. Co. v. United States*, 186 U.S. 279, 293-95 (1902) (damages in action for illegal logging of timber from Indian reservation was the market value of the timber after it was felled, transported, and prepared for sale, not its value before any labor was expended on it). Given the defendant's greater access to information about its own profits, "all inferences [are] resolved against the defendant on these issues." REMEDY OF ACCOUNTING at 470; *see also* Rest. (3d) of Restitution § 51(5)(d) (plaintiffs must produce evidence of "at least a reasonable approximation of the amount of the wrongful gain" but "[r]esidual risk of uncertainty in calculating net profit is assigned to the defendant"). Thus, even if, as Enable contends, specific profit is not directly generated by a particular section, the entire system is used together to generate profit. Any uncertainty about the profit allocation is borne by Enable as the trespasser.

Finally, Enable discusses aggregation of its deferred costs and the profits it illegally earned. (Enable's Br. at 30.) This argument shows perfectly why Enable's arguments are suited to trial, not summary judgment. Mr. Gray did not aggregate these costs in his report. He calculated the total deferred costs at a time when Enable had not

rerouted its pipeline, as an alternative measure of damages. As discussed at the last status conference, Enable has since rerouted the pipeline, and Mr. Gray is working on a supplemental report that takes into account only the time value savings that Enable realized by delaying those expenditures. (*See* Dkt. 132.) Those amounts are properly aggregated with the profits Enable actually earned by trespassing.

For all of these reasons, the competing experts' opinions regarding Plaintiffs' damages and the measure of disgorgement are issues for trial, not summary judgment.

### D.    Plaintiffs Are Entitled to Pursue Punitive Damages at Trial.

Enable concedes that punitive damages are available under federal law.[14] (Enable's Br. at 33.) Given that Enable has trespassed for nearly two decades, fully knowing that it did not have an easement, this is a textbook punitive damages case.

Enable's efforts to avoid punitive damages at summary judgment are meritless. Enable states that Plaintiffs' disgorgement remedy "is punitive in nature" and that, "because there is already a punitive component to the disgorgement Plaintiffs seek, if disgorgement is found to be warranted here, no further punitive damages should be allowed."[15] (*Id.* at 31-32). Enable's sole support for this proposition is a Wisconsin state court case—*Everbrite Elec. Signs, Inc. v. Yezzi*, 144 Wis. 2d 949 (Wis. Ct. App. 1988). However, federal courts consistently recognize that "[d]isgorgement [is] remedial rather

---

[14] Under Oklahoma law, a landowner may also pursue recovery for trespass ***and*** punitive damages against a pipeline company that uses private property without permission, and without exercising the power of eminent domain (if available). *Allen*, 552 P.2d at 381-82.

[15] Enable has also argued that Plaintiffs are not entitled to disgorgement and can only recover damages in the form of reasonable rental value. If that were to be the result at trial, punitive damages would still be available, under Enable's own arguments.

than punitive." *SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006); *Mason v. Sybron Corp.*, 955 F.2d 48 (9th Cir. 1992) ("[A]lthough disgorgement discourages misappropriation, it is not punitive. This circuit does not consider disgorgement to be a form of punitive damages."); *Zippertubing Co. v. Teleflex Inc.*, 757 F.2d 1401, 1413 (3d Cir. 1985) (affirming award of punitive damages in addition to profit disgorgement against the defendant); Rest. (3d) of Restitution § 51 (2011) ("Disgorgement of wrongful gain is not a punitive remedy.").

There is nothing punitive about preventing Enable from benefiting from its illegal trespass in this specific instance. This is entirely consistent with the purpose of the disgorgement remedy, which is to "eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." Rest. (Third) of Restitution § 51. However, without the deterrent of punitive damages, Enable can, and likely will, decide to roll the dice in the future, knowing that it may only be forced to disgorge any profits it makes by trespassing in the rare event that the landowners are able to secure counsel to represent their interests. Indeed, Enable's witnesses have testified that Enable frequently occupies land after its easements expire (sometimes for more than a decade), showing that there is currently no incentive for it to work to secure renewals in a timely manner. Punitive damages, not disgorgement, serve the purpose of deterring this behavior in the future.

E.    **Plaintiffs Are Already Entitled to Recover Attorneys' Fees, and Any Further Attorneys' Fee Award Should Be Determined After Trial.**

Plaintiffs are already entitled to an award of attorneys' fees based on the dismissal of Enable's condemnation counterclaim. Enable initiated this litigation by filing an action

to condemn its easement under 25 U.S.C. § 357 and 52 Okla. Stat. Ann. §§ 22 and 27, and 66 O.S. §§ 50-60. (Case 5:15-cv-1250 [Dkt. 1]). That action was dismissed, the dismissal was affirmed, and Plaintiffs were awarded attorneys' fees under Okla. Stat. tit. 66, § 55(D). *See 25 Foot Wide Easement*, 908 F.3d at 1245.

However, Enable also filed a duplicative counterclaim in this action to take the same easement. [Dkt. 7.] Despite the redundant nature of Enable's counterclaim, Plaintiffs were forced to defend against it, and it was also dismissed.

The fee petition in the previous condemnation action excluded the time spent seeking dismissal of Enable's counterclaim. The Affidavit of David Smith, submitted in support of the previous fee award, stated that he was careful "not to include any time related to the Trespass Action. If there was a single action such as a meeting or conference that related to both actions, I charged only one-half of the time incurred to this action." Pls.' App., Ex. M (Affidavit of David Smith, submitted in Case No. 5:15-cv-1250, Dkt. 58) ¶ 9. The time entries submitted with that fee petition confirm it did not include time related to the counterclaim in this case. The work on those motions overlapped, but, as Mr. Smith made clear, only half of that time was submitted in the earlier petition. Plaintiffs will submit a motion for fees related to Enable's counterclaim at the end of this case, so those fees will be included in the final judgment under Okla. Stat. tit. 12 § 696.4 and Okla. Stat. tit. 66, § 55(D).

Enable's motion for summary judgment on Plaintiffs' fee request can be denied on this basis alone. However, grounds for additional attorneys' fees may exist, subject to future motions after trial. The court's inherent authority to sanction "bad-faith" litigation

28

conduct is an "exception to the traditional American Rule of disallowing attorneys' fee awards." *Kornfeld v. Kornfeld*, 393 F. App'x 575, 577 (10th Cir. 2010). This exception is available "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 578 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Here, Enable has, without offering any explanation, taken diametrically opposed positions on a least one critical fact in this case—whether this section of pipeline was necessary to its business. *See* Section III.B.1. It may be that some explanation for Enable's about-face can be offered at trial. However, viewing the facts in the light most favorable to Plaintiffs, Enable's motion for summary judgment should be denied, and attorneys' fees should be addressed through post-trial motions, if necessary.

## F.     Plaintiffs Are Entitled to Recover for the Entire Trespass Period.

As explained in Plaintiffs' Motion for Partial Summary Judgment Regarding the Date Defendants' Trespass Commenced [Dkt. 135], Enable's trespass commenced when its easement expired in 2000, and the BIA did not have authority to authorize an extension or renewal of the expired easement, or to release Plaintiffs' claims for trespass. Enable cites a single case that has nothing to do with federal Indian law, *Valley Asphalt, Inc. v. Stimpel Wiebelhaus Associates*, 3 F. App'x 838 (10th Cir. 2001), to argue that Plaintiffs' trespass claims for the time period before 2006 should be barred based on an accord and satisfaction theory. (Enable's Br. at 35.) But, federal courts only incorporate state common law rules, including affirmative defenses, "to the extent those rules are consistent with federal law and policy." *Davilla III*, 913 F.3d at 967; *Fed. Deposit Ins. Corp. v. Cover*, 714 F. Supp. 455, 458-59 (D. Kan. 1988) (holding specific federal

securities statute preempted accord and satisfaction defense).

Enable's accord and satisfaction argument has also been consistently rejected in Indian land claim cases, precisely because federal statutes control. In *Bunch v. Cole*, 263 U.S. 250 (1923), the Supreme Court held that rental payments of $75 per year were no defense to the plaintiff's claims for trespass to allotted land, because the leases were void as a matter of federal law, and the plaintiffs were allowed to pursue an accounting and disgorgement of the profits the lessee made subletting the land. *See id*. at 251, 254-55.

Similarly, in *Southern Pacific Transportation*, the Ninth Circuit held that Indian's receipt of payments pursuant to a railroad right-of-way agreement had no effect on the trespass claims when the right-of-way was invalid under federal statutes. 543 F.2d at 698. As the Ninth Circuit stated, "[t]o give effect to an invalid attempt to convey an interest in tribal lands in violation of the statute by holding that it creates a license would undermine [the] purpose [of the federal statutes]." *Id*.

So too here. The Tenth Circuit held that "Congress has dictated the prerequisites of a right to enter [Plaintiffs' property] by statute." *Davilla III*, 913 F.3d at 967. Under 25 U.S.C. § 324, Enable was required to obtain the consent of the "owners or owner of a majority of the interests therein," which it did not. *See id*. Enable's argument that it obtained a six-year extension of the easement, without Plaintiffs' consent, in violation of § 324, is without merit. Enable cannot circumvent the federal right-of-way statute in this manner. Summary judgment on the pre-2006 trespass should also be denied for Enable.

## **CONCLUSION**

For the above reasons, Enable's Summary Judgment Motion should be denied.

Respectfully submitted this 15th day of April 2019.

/s/ Dustin T. Greene
Dustin T. Greene
N.C. Bar No. 38193
Elizabeth L. Winters
N.C. Bar No. 44918
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101
Telephone:  (336) 607-7432
Fax:  (336) 734-2612
dgreene@kilpatricktownsend.com
bwinters@kilpatricktownsend.com

-and-

Catherine Munson
D.C. Bar No. 985717
Keith M. Harper
D.C. Bar No. 451956
Krystalyn Kinsel
A.Z. Bar No. 0328853
KILPATRICK TOWNSEND & STOCKTON LLP
607 14th Street, N.W., Suite 900
Washington, D.C. 20005
Telephone:  (202) 508-5800
Fax: (202) 508-5858
cmunson@kilpatricktownsend.com
kharper@kilpatricktownsend.com


Stephanie C. Hudson
Oklahoma Bar. No. 15977
Oklahoma Indian Legal Services
4200 Perimeter Center Dr., Suite 222
Oklahoma City, OK 73112
Telephone: (405) 943-6457
Fax: (405) 917-7060
hudson@oilsonline.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2019, I electronically filed the foregoing

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL

SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will

send notification of such filing to the following registered users:

Stratton Taylor
Toney D. Foster
Clint Russell
Kassie N. McCoy
Mark H Ramsey
Taylor, Foster, Mallett, Downs,
Ramsey & Russell
400 West Fourth Street
P.O. Box 309
Claremore, OK  74018
(T) (918) 343-4100
(F) (918) 343-4900

*Attorneys for Defendants*

John A. Kenney
Michael K. Avery
Michael D. McClintock
McAfee & Taft
211 North Robison
Two Leadership Square, Tenth Floor
Oklahoma City, OK  73102
(T) (405) 235-9621
(F) (405) 270-7212

*Attorneys for Defendants*

and I hereby certify that I have also mailed the foregoing document to the following

recipients:

None

Respectfully submitted, this the 15th day of April 2019.

/s/ Dustin T. Greene
Dustin T. Greene

32