# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MARCIA W. DAVILLA *et al.*,                )
                                            )
          Plaintiffs,                )
                                            )
v.                                          )          **Case No. CIV-15-01262-G**
                                            )
ENABLE MIDSTREAM PARTNERS, LP               )
*et al.*,                                   )
                                            )
          Defendants.                )

---

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

John. A. Kenney, OBA #4976
Michael D. McClintock, OBA #18105
Michael K. Avery, OBA #22476
**MCAFEE & TAFT A PROFESSIONAL CORPORATION**
Two Leadership Square, Tenth Floor
211 North Robinson
Oklahoma City, OK 73102
Telephone: 405/235-9621
Fax: 405/270-7212
john.kenney@mcafeetaft.com
michael.mcclintock@mcafeetaft.com
michael.avery@mcafeetaft.com

April 22, 2019

## I.  PLAINTIFFS ARE NOT ENTITLED TO AN AWARD OF EQUITABLE DISGORGEMENT

Enable does not dispute Plaintiffs should be compensated for Enogex's use of the Property during the period of time in which a renewed easement was sought from the BIA. But, it is not compensation Plaintiffs seek. Instead, Plaintiffs ask the Court to disgorge[1] profits Plaintiffs say Enogex received using 0.73 acres of Plaintiffs' Property during the time it sought renewal.[2]

Plaintiffs say disgorgement should be awarded without reference to the equities of the matter. Alternatively, Plaintiffs argue that if the Court must balance the equities, Plaintiffs remain entitled to disgorgement. Plaintiffs are incorrect in both regards.

### A.  DISGORGEMENT SOUNDS IN EQUITY AND THUS, BALANCING IS REQUIRED

There can be no doubt disgorgement is an equitable remedy. *See, e.g.*, *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) ("[W]e have characterized damages as equitable where they are restitutionary, such as in 'action[s] for disgorgement of improper profits[.]'") (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987)); *Fifty–Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("[T]he current law recognizes that actions for disgorgement of improper profits are equitable in nature."); *Cavanagh*, 445 F.3d at 119–20 (collecting authorities); *Roberts v. Sears,*

---

[1] "The term 'disgorgement' is relatively new to the law; in 18th century chancery courts, what we now call disgorgement was embodied in the remedies of 'accounting, constructive trust, and restitution.'" *Osborn v. Griffin*, 865 F.3d 417, 462 (6th Cir. 2017) (quoting *S.E.C. v. Cavanagh*, 445 F.3d 105, 119 (2d Cir. 2006)). Although Plaintiffs primarily refer to the relief they seek as an "accounting" rather than disgorgement, in light of the foregoing and for ease of reference, Enable refers to the relief as disgorgement.

[2] According to Plaintiffs, "[t]he only issue left [in this lawsuit] is to calculate those profits" that Plaintiffs say should be disgorged. *See* [Dkt. No. 137] at 21. The disgorgement sought is not compensatory in nature; *i.e.*, it is not designed "'to compensate victims,' but rather 'forces a defendant to account for all profits reaped through' his wrongful conduct, 'even if it exceeds actual damages to victims.'" *Osborn*, 865 F.3d at 461.

*Roebuck & Co.*, 617 F.2d 460, 465 (7th Cir. 1980) ("Restitution for the disgorgement of unjust enrichment is an equitable remedy"); *S.E.C. v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) (Friendly, J.) (holding there is no 7th Amendment right to a jury trial for disgorgement because "the court is not awarding damages to which [a] plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment"); *Osburn*, 865 F.3d at 464 ("[W]e agree with Lord Coke, Blackstone, Justice Story, the Supreme Court, and the Second and Ninth Circuits, as well as numerous other commentators—an action seeking disgorgement is equitable in nature"). And as the Tenth Circuit observed, equitable remedies are not granted automatically under federal trespass law because "the sheer right to exclude simply cannot begin and end the equitable analysis" required. *See* [Dkt. No. 136-37] at 29-30. Indeed, "the Supreme Court [has] . . . chastised [lower courts] for granting equitable relief based solely on success on the merits" and without balancing the equities. *See id.* at 27-28 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)); *see also New Mexico Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, No. CIV 02-0199 JB/LCS, 2004 WL 6409640, at *7 (D.N.M. Aug. 31, 2004) (explaining that "[t]he Supreme Court [has] acknowledged the fundamental principle that an equitable remedy does not issue as a matter of course, and that the court must balance the competing claims of injury and consider the effect on each party") (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).

Notwithstanding the foregoing, Plaintiffs argue that pursuant to *United States v. Santa Fe Pac. R. Co.*, 314 U.S. 339 (1941), disgorgement is automatically awarded upon a finding of trespass across Native American lands. This is incorrect. To be sure, *Santa Fe* and its progeny recognize that Native Americans may pursue an "action for an accounting of all rents, issues

and profits against trespassers on their land." *Oneida Cty., N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 235–36 (1985) (internal quotation marks omitted).[3] And in light of the fact disgorgement may be pursued, "[t]he argument is sometimes made that the Indian owner is [automatically] entitled to restitution, rather than rental value, for trespasses involving an unauthorized use of trust surface." "This argument, however, has been largely rejected by the courts, and invokes a punitive aspect inconsistent with the compensatory nature of trespass damages." Colby L. Branch, ACCESSING INDIAN LANDS FOR MINERAL DEVELOPMENT, 2005 No. 5 Rocky Mountain Mineral Law Foundation-Inst Paper No. 3 (citing *Hammond v. City of Madera*, 859 F.2d 797 (9th Cir. 1988).[4]

The reason disgorgement is not automatically awarded in connection with Native American trespass claims is that although disgorgement is a remedy which can be pursued in connection with such claims, the Supreme Court has made clear that "the governing rule of decision" for such claims is to "be fashioned by [a] federal court in the mode of the common law." *Oneida*, 470 U.S. at 236 (internal quotation marks omitted). And as discussed

---

[3] Judge Miles LaGrange similarly observed disgorgement is a remedy <u>available</u> to be pursued by Plaintiffs. *See* [Dkt. No. 51] at 5. Judge Miles LaGrange did not, however, conclude this remedy should be awarded in this case. *See id.* Thus, Enable does not, as Plaintiffs suggest, seek reconsideration of Judge Miles LaGrange's Order. *See* [Dkt. No. 137] at 11-12.

[4] Plaintiffs say *Hammond* "is easily distinguishable," but this is not so. Like the trespassing pipeline at issue here, the trespassing road in *Hammond* was used in connection with a broader system that generated revenues. But the *Hammond* court rejected an attempt to disgorge benefits the road system, as a whole, generated via its use of the property in question. The Court should reach the same conclusion here.

The *Pend Oreille* case discussed by the parties also supports Enable's position. As the Court there observed, the goal to be reached was to ensure there was "<u>fair</u> compensation to the Indians for use of their lands." *See* 135 F.3d 602, 609 (9th Cir. 1998) (emphasis in original). This "fairness" concept is the hallmark of equity, which requires a balancing of factors, not an automatic award of relief.

*supra*, the common law requires a balancing of equities. It is thus evident that a balancing of the equities is required before disgorgement could be awarded to Plaintiffs in this case.[5]

### B.     UPON BALANCING EQUITIES, DISGORGEMENT SHOULD NOT BE AWARDED

Plaintiffs say that if a balancing of the equities is required (and it is), this work should be performed by a jury, not the Court. *See* [Dkt. No. 137] at 17. Enable respectfully disagrees. It is well established that "[i]f disgorgement of [a] defendant's profits was not available at law for the kind of wrong at issue[, the plaintiff] has no constitutional right to a jury to decide the disgorgement question." *See Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,* 895 F.3d 1304, 1320 (Fed. Cir. 2018). And Plaintiffs have provided no authority which indicates the monetary relief they seek via disgorgement was a remedy available under the common law, rather than in equity. *Cf. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (explaining that the Supreme Court has made clear that it "has not . . . held that any award of monetary relief must <u>necessarily</u> be 'legal' relief," and that it has "characterized damages as equitable where they are restitutionary, such as in actions for disgorgement of improper profits") (emphasis in original). Thus, Plaintiffs do not have a right to a jury on the disgorgement issues in this lawsuit.

The question of who (whether the Court or jury) would be required to balance the equities at a trial does not, however, need to be reached for instant purposes. Even if

---

[5] Enable respectfully posits the right to stop a continuing trespass is more sacrosanct than the right to strip ill gotten gains from a trespasser. Consequently, if Native American landowners were automatically entitled to disgorge benefits received by trespassers, it would follow perforce they would also be automatically entitled to a permanent injunction requiring removal of the trespassing structure. The Tenth Circuit, however, made clear that in an appropriate circumstance, equity would not warrant a permanent injunction requiring such removal. *See* [Dkt. No. 136-37] at 22-30]. Logically, then, equities must also be balanced in considering whether to disgorge benefits received by a trespasser.

Plaintiffs have a Seventh Amendment right to a jury on some or all of the disgorgement issues, "[i]t is well-settled that the Seventh Amendment is not violated by proper entry of summary judgment, because such a ruling means that no triable issue exists to be submitted to a jury." *Payne v. Nat'l Sec. Agency*, 232 F.3d 902 (10th Cir. 2000). Thus, even if the Court agreed that a jury would be tasked with balancing equities at trial, it could still enter summary judgment provided the standards set forth in Fed. R. Civ. 56 are satisfied. And here they are.

The facts of this case are not materially controverted. It is undisputed that: (1) the BIA granted a 20-year right-of-way easement over the Property to Producer's in 1980; (2) Enogex's predecessor acquired Producer's in 1999 and thereby succeeded to the rights of the easement; (3) the easement expired in 2000; (4) in 2002 Enogex submitted a renewal application based on an independent appraisal (approved by the BIA) that showed the value of a renewed easement to be $40 per rod; (5) the BIA urged Plaintiffs to accept this offer, but they did not and instead demanded $63,600 – an amount exceeding the appraised value of the surface of the Property; (6) when a deal could not be struck, the BIA terminated Enogex's renewal application and levied a trespass assessment which Enogex paid and which Plaintiffs received; (7) after a subsequent "mediation" proved unsuccessful, Enogex, which had never before condemned an easement on an allotment but possessed the legal right to do so at the time, decided condemnation was its best option; (8) the BIA urged Enogex not file for condemnation, and asked the company to re-submit its renewal application, which Enogex did in 2008; (9) unbeknownst to Enable, the BIA went on to grant the 2008 application, reverse it decision in 2010, and remand the matter for negotiations; (10) further communications did not take place until shortly before this lawsuit was filed because

Plaintiffs, who were the only party aware of the BIA's actions, instructed the BIA not to contact Enogex because their counsel would do so, but struggled for a number of years to find counsel; (11) while all this was taking place, a fraction of the Property escheated to the Kiowa Tribe, stripping Enable of its previous right to condemn an easement; and (12) at no point prior to the filing of this lawsuit did Plaintiffs demand Enable vacate the Property.

According to Plaintiffs, if disgorgement is not ordered based on these facts, "this Court [w]ould create a form of private eminent domain that is contrary to multiple federal statutes, whereby Plaintiffs are forced to accept Enable's offer to lease their property for the past nineteen years at [a] $40 per rod rental rate." *See* [Dkt. No. 137] at 1.[6] But Enable does not contend it condemned an easement or otherwise had a possessory right to occupy the Property during the holdover period. Instead, Enable asks that Court determine Plaintiffs are not entitled to disgorge the benefits they say Enable received during this time and at trial determine the proper compensation owed to Plaintiffs for the holdover period.

Federal law is clear in its conclusion that unless granted in accordance with statute – in this case the Indian Right of Way Act, 25 U.S.C. §§ 323-28 (the "Act") – possessory interest in Native American lands are of no effect. *See, e.g.*, *United States v. S. Pac. Transp. Co.*, 543 F.2d 676 (9th Cir. 1976). But there is likewise "little doubt that Indians may permit non-Indians to come onto their [land] for some limited purpose . . . and that the Indians' consent is a good defense to a later trespass action." *See id.* at 699. The key distinction between these two paradigms – a statutorily infirm possessory right and a permissible temporary license – is the ability to revoke the latter. *See id.* at 699 n.38 (citing F. Cohen, Handbook of Federal

---

[6] *See id.* at 22 ("Enable would be able to force Indian landowners to accept rental value for their land, against the landowners' will, simply by trespassing.").

Case 5:15-cv-01262-G   Document 142   Filed 04/22/19   Page 8 of 13


Indian Law 220 (Univ. of N.M. Press reprint of 1942 ed.) at 332-33). And this is a critical here.

Enable does not, as Plaintiffs suggest, contend EOIT did or could have obtained an irrevocable possessory interest in the Property (*i.e.*, an easement) without Plaintiffs' consent or in contravention of other requirements of the Act. But the fact remains that during the holdover period, Plaintiffs never asked or demanded Enogex vacate the Property. *See* [Dkt. No. 136] at 15-16 (UMF No. 68). This created a situation akin to the permissible grants of revocable license discussed by the *S. Pac. Transp. Co.* court whereby Enogex could remain on the Property while negotiating (unless asked to leave), but would be required to compensate Plaintiffs for use of their Property during this holdover period (*i.e.*, to pay for the "license").

Plaintiffs say that determining what compensation they are owed for the holdover period, the Court should be mindful "of the large objectives of the Act." *See* [Dkt. No. 137] at 22 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975)). And Enable does not disagree. But viewing the facts of this case through the lens of the Act's purpose does not, as Plaintiffs argue, counsel for an award of disgorgement.

The Act was passed "to help ensure that necessities such as telegraph lines[, pipelines,] and roads could continue without encumbrance" across the "checkerboard of tribal, individual Indian, and individual non-Indian land interests" that resulted from the allotments which were granted throughout the 19th and early 20th Centuries. *See Pub. Serv. Co. of N.M. v. Barboan*, 857 F.3d 1101, 1105 (10th Cir. 2017). Bearing this objective in mind and in light of certain practical realities – most notably, the fact that holdover tenancies on Native American allotments are inevitable given the 20-year term of easements and the

speed at which the BIA processes renewal applications – the BIA has, acting pursuant to authority delegated to it via the Act, promulgated regulations that dictate what is to occur in situations such as those presented in this case; *i.e.*, where a holdover tenant seeking renewal has not been asked to vacate. In these circumstances, the holdover tenant is required to compensate the landowners for the fair-market value of an easement during the holdover period measured by either: (a) the terms of a renewed easement, which are "charged against the holdover period"; or (b) in the case where no renewed easement is obtained and tenant must later vacate, the independently appraised value of an easement for the holdover period. *See* 25 C.F.R. § 169.410.[7] Any award of disgorgement would contravene these regulations and the principles of equity that undergird them and would frustrate the purposes of the Act.

## II.   PLAINTIFFS ARE NOT ENTITLED TO PUNITIVE DAMAGES

In discussing the punitive nature of disgorgement, Plaintiffs cite a series of cases in which the remedy was used in a restitutionary manner; *i.e.*, to restore to plaintiffs profits which they would have earned if defendants had not deprived them of the opportunity. *See* [Dkt. No. 137] at 27 (citing *Mason v. Sybron Corp.*, 955 F.2d 48 (9th Cir. 1992) (awarding disgorgement in a trade secret case measured by "the profits plaintiff did not make but would have made had his secret not been unlawfully used")); *Zippertubing Co. v. Teleflex Inc.*, 757 1401, 1412 (3d Cir. 1985) (awarding disgorgement in a prospective business advantage case based on a theory that if "one has unlawfully deprived another of a contract or a business opportunity and has made that opportunity his own, he is not to be permitted to

---

[7] 25 C.F.R. § 169.410 was promulgated after this lawsuit was filed. As Enable has explained, however, the BIA has consistently acted in accord with the regulation's dictates in dealing with the parties. *See* [Dkt. No. 139] at 16 n.3.

retain any of the profits")). In these circumstances, it can be understood disgorgement is not punitive or a penalty, but is instead a form of restitution used to restore to the plaintiff that which he would have otherwise had but for the defendant's tortious conduct.

Unlike a trade secret, patent, trademark, or prospective business advantage case, disgorgement in a trespass case such as this – where Plaintiffs could not earn the profits they seek to disgorge – does not restore to Plaintiffs that which they would have earned but for the tortuous conduct at issue. Put otherwise, an award of disgorgement in this case would not restore Plaintiffs to a position they would have been in but for the trespass. Instead, there would be a windfall to Plaintiffs designed to deter future potential tortfeasors.

For reasons already articulated, Enable disputes the notion that future actors must be discouraged from doing that which Enable did – holdover with Plaintiffs' knowledge while seeking a renewed easement. *See, e.g.*, *Schafer v. Centerpoint Energy Oklahoma Gas*, Case No. 17-CV-365 (N.D. Okla.) [Dkt. No.97] at 13 ("CenterPoint's continued operation and maintenance of [its pipeline] while negotiating with [the landowner for a new easement] does not suggest malice, oppression, or evil intent"). Regardless, if disgorgement were awarded, it would unquestionably be punitive in nature. And for that reason, additional punitive damages would be unwarranted.

## III.   PLAINTIFFS' ATTORNEYS' FEES ARGUMENTS SHOULD BE REJECTED

Enable does not dispute Plaintiffs can seek attorneys' fees related to the dismissal of Enable's condemnation counterclaim. Plaintiffs, however, go on to say that they can recover attorneys' fees for Enable's "bad faith" litigation conduct. *See* [Dkt. No. 137] at 29.[8] Not so.

---

[8] The "bad faith" exception to the American Rule is applicable only to litigation (and not pre-suit) conduct. *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 766 (10th Cir. 1997).

According to Plaintiffs, Enable's "bad faith" is shown by an apparent inconsistency between the fact that although it would "less efficient" and additional operational costs would be incurred, EOIT could serve all customers without using the 77 rods of pipeline at issue, *see* [Ex. "1"] (Soell Depo.) at 26:20-27:10, and EOIT's representation that the 77 rods are sufficiently "necessary" to its business to warrant the filing of a claim for condemnation. *See id*. But there is nothing inconsistent about this, nor does it demonstrate "bad faith."

"The word 'necessity,' as []it is employed in condemnation proceedings, does not mean an absolute necessity" and the "property condemned [need] not [be] absolutely necessary for public purposes." *Luccock v. City of Norman*, 578 P.2d 1204, 1206 (Okla. 1978). So long as the property is needed "for the economic and efficient accomplishment of a lawful public purpose" it can property be taken by the condemning authority. *See id*.

It is undisputed Enogex's use of Plaintiffs' Property allowed the company to more efficiently operate its business with lower operational costs. *See* [Ex. "1"] at 26:20-27:10. And moreover, when considering whether to seek to condemn an easement on Plaintiffs' Property EOIT also had to consider the additional economic costs of alternative options which include the costs of removing the 77 rods from the Property and acquiring easements over and laying new pipe on adjacent tracts. And as Plaintiffs' expert has noted, these costs exceeded $1 million. *See* [Dkt. No. 136-35]. Bearing this in mind, it is evident that Plaintiffs' Property was sufficiently "necessary" to warrant the filing of a condemnation action. There has, therefore, been no "bad faith" which would entitle Plaintiffs to an award of attorneys' fees.

Respectfully submitted,


/s/ John A. Kenney
John A. Kenney, OBA #4976
Michael D. McClintock, OBA #18105
Michael K. Avery, OBA #22476
**MCAFEE & TAFT A PROFESSIONAL CORPORATION**
Two Leadership Square, Tenth Floor
211 North Robinson
Oklahoma City, OK 73102
Telephone: 405/235-9621
Fax: 405/270-7212
Email: john.kenney@mcafeetaft.com
        michael.mcclintock@mcafeetaft.com
        michael.avery@mcafeetaft.com

        -and-

Stratton Taylor, OBA #10142
Toney D. Foster, OBA #16063
Clint Russell, OBA #19209
Kassie N. McCoy, OBA #31405
**TAYLOR, FOSTER, MALLETT, DOWNS, RAMSEY & RUSSELL**
400 West Fourth Street
P.O. Box 309
Claremore, OK 74018
Telephone: 918/343-4100
Fax: 918/343-4900
Email: staylor@soonerlaw.com
        tfoster@soonerlaw.com
        crussell@soonerlaw.com
        kmccoy@soonerlaw.com

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of April, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

Stephanie C. Hudson
**OKLAHOMA INDIAN LEGAL SERVICES**
4200 Perimeter Center Dr., Ste.  222
Oklahoma City, OK 73112
hudson@oilsonline.org

-and-

Catherine F. Munson
Keith M. Harper
Kristalyn Kinsel
**KILPATRICK TOWNSEND & STOCKTON, LLP**
607 14th Street, N.W., Ste.  900
Washington, D.C.  20005
cmunson@kilpatricktownsend.com
kharper@kilpatricktownsend.com
kkinsel@kilpatricktownsend.com

-and-

Dustin T. Greene
Elizabeth L. Wiinters
**KILPATRICK TOWNSEND & STOCKTON, LLP**
1001 West Fourth Street
Winston-Salem, NC 27101
dgreene@kilpatricktownsend.com
bwinters@kilpatricktownsend.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ John A. Kenney*